STATE BANK OF FLORIDA, APPELLANT, vs. JOHN B. ROCHE, ET AL., APPELLEES.

1. While it is the well established rule in equity that where one creditor holds security upon two funds, with liberty to resort to either for the payment of his demand, and another creditor holds a junior security up n one only of the fund, the former will be compelled to exhaust the fund which he alone can reach before resorting to the other fund and thereby depriving the latter creditor of his security, yet the rule is one of equity and can not be invoked by the creditor against another in cases where it would injuriously affect the rights of the prior creditor or third person.

2. In a contest between partnership creditors to be paid out of the assets of a common partnership debtor, it appeared that one partnership creditor held a mortgage security for the payment of his claim executed by one member of the firm and his wife on the property of the latter, who was in no way connected with or responsible for the partnership debts other than the execution of said mortgage: *Held*, That the creditor holding the mortgage security could not be compelled to first resort to such security, and leave the partnership assets to the other creditors.

3. Where, in such a contest, it clearly appears from the evidence produced by a partnership creditor that his claim brought forward for payment out of partnership assets is a partnership demand, it is error for the court to reject such claim in the absence of proof that it was not a partnership liability, or otherwise not entitled to share in such assets.

Appeal from the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

*A. W. Cockrell & Son* for Appellant.

*H. H. Buckman*, for Appellees.

MABRY, C. J.:

On the 5th day of December, 1885, Robert E. Byrd filed a bill against John B. Roche for the purpose of dissolving a partnership alleged to exist between them under the firm name of J. B. Roche & Co., and for settling up the same according to the rights of the respective partners. In accordance with a prayer for that purpose, a receiver was appointed to take charge of the partnership affairs, and after making a sale of the partnership property reported the money realized therefrom to the court. The partnership was largely in debt at the time the bill was filed for its dissolution, and a controversy arose among the creditors of the firm, among whom a distribution of the money arising from the sale had been ordered by the court, as to the right of some to share in the funds in the hands of the receiver. The questions presented on the present appeal relate solely to the decision of the court as to the right of the State Bank of Florida to share in the distribution of the partnership funds, and in disposing of the questions it is not necessary to refer to the allegations of the bill and answer filed in the case.

So far as the record informs us, no further proceedings were had on the bill to dissolve the partnership after replication was filed on the part of the partners, and it is likely that this part of the case was arrested by the proceedings of the creditors to get possession of the partnership funds. No question is raised as to the manner in which the creditors got before the court, or as to the manner in which an issue was presented by them as to who was entitled to share in the funds.

The creditors were especially authorized by the court to prove their claims before a master, and they were also authorized to contest there the claims of each other to share in the partnership funds. The master took testimony, and reported, among other claims, that those presented by the State Bank of Florida were entitled to be paid out of said funds. Certain of the creditors contested the bank's claims, and filed exceptions to the report of the master, and upon a hearing of the exceptions the court decided that two thousand dollars of said claims, evidenced by two promissory notes, were demands against the partnership assets, but that the bank had a mortgage security for said notes on property other than the partnership property to the value of fifteen hundred dollars, and that only the amount due on the notes in excess of the mortgage security should share in the partnership funds. The court further decided that a claim of $234.28, presented by the bank, in addition to the notes mentioned, was not a demand against the partnership, and should not share in the funds to be distributed, and also that the sum of $221.62 should be deducted from the amount of the notes, in addition to the value of the mortgaged property, as it was shown that this sum had been deposited with the bank by the partnership firm before the receiver was appointed. From this decision the bank appealed

It is our judgment that the entire amount due on the two notes, as well as the additional sum of $284.28 presented by the bank, should have been allowed as proper claims to be paid out of the partnership assets in the hands of the receiver, and that it was error to direct the value of the mortgaged property, and the sum of $221.62 alleged to have been deposited with the bank, to be deducted from the bank's claim before they

should share in the distribution of the said fund. There is no question about the notes being claims against the partnership of Roche & Co., and this was so decided by both the master and the court.

About thirty days before the bill was filed by Byrd to dissolve the co-partnership of J. B. Roche & Co., there was in the State Bank of Florida the sum of $221.62 to the credit of said partnership firm, on account, and at that time Roche informed the bank that he was going to dissolve his partnership relation with Byrd, and directed that the funds in bank be placed to his credit. Byrd then informed the bank that he was unwilling to a dissolution of the firm unless satisfactory arrangements were made with him, but it appears that the bank opened an account with Roche, and transferred the sum of $221.62, standing to the credit of Roche & Co., to this account, and that Roche drew on the bank for enough to exhaust the sum mentioned, and to the extent of $284.28 more. This last sum is the amount presented by the bank, together with the notes for payment out of the partnership assets, and which was not allowed by the court. The testimony shows that when the two notes for $1,000 each were executed by Roche & Co. to the bank, Roche and wife executed a mortgage on the wife's property to secure the notes and any other sums that the bank might honor for the firm. At the time the bank account was changed to one between the bank and Roche, the partnership had not been dissolved, and there was no dissolution during the time that the account was increased to an indebtedness of $284.28 in addition to the notes in favor of the bank. This indebtedness was incurred by Roche in carrying on the partnership business, and it is shown that all the money he obtained from the bank was expended in

paying debts due from the firm.   It affirmatively appears that Roche did not use any of the money obtained after the account was transferred on his personal account, but that it was to carry on the business of the partnership between himself and Byrd, then not dissolved.   Roche directed the bank to so arrange the account for the purpose of enabling him to assume the financial direction of the firm.   He was regarded by the bank as the financial partner, as he owned all the capital, and Byrd's interest was only a part of the proffits realized from the business.   Prior to the transfer of the account, firm transactions with the bank had been made in the name of Roche, and it does not appear that any wrong was done or intended by the bank, or any advantage obtained over any one by changing the account, as requested by Roche.   The money was furnished by the bank to Roche to carry on the business just as it was carried on up to the time the change was made in the manner of keeping the account.   On the testimony offered before the master by the bank, and which was not contradicted by any evidence on the part of the contesting creditors, it should have been decided that the claims presented by the bank were proper to be allowed out of the partnership assets.

The remaining question presented on the decision of the court is one of law.   There is no dispute about the fact that the bank held a mortgage for $3,000, but it was intended to secure the two notes of $1,000 each, and such further sums as the bank might advance to the firm of Roche & Co.   The property described in this mortgage is shown to be that of Mrs. Roche, and there is nothing to indicate that she was in any way connected with the business of the firm of Roche & Co.   The testimony tended to show that the mortgaged property was worth some fifteen hundred dollars, and

the court proceeded upon the theory of marshalling securities among creditors against a common debtor.

It is a doctrine of equity, based upon natural justice, that if a party has two funds to which he can resort in collecting his debt, he will not be permitted by his election and caprice to disappoint another creditor who can go upon one of the funds only, and the latter will be allowed to take the place of the former, or to compel him to resort to that fund which can be reached by him only.    Sheldon on Subrogation states the rule as follows, *viz:* "Where one creditor holds security upon two funds or estates, with perfect liberty to resort to either for the payment of his demand, and another creditor holds a junior security upon one only of these funds, equity will compel the former creditor to exhaust the fund which he alone can hold as security, before coming upon the latter fund, and thereby depriving the latter creditor of his security." This is the law as declared by this court as well as others. Ritch vs. Eichelberger, 13 Fla. 169; Cheesebrough vs. Millard, 1 Johns. Ch. 409, S. C. 7 Am. Dec. 494; Jones vs. Zollicoffer, 2 Hawks (N. C.), 623, S. C. 11 Am. Dec. 795.    The partnership had not been dissolved when the account was made with the bank, and, as it was shown to be a partnership debt, should have shared in the assets.    Schleicher, Schumm & Co. vs. Walker, 28 Fla. 680, 10 South. Rep. 33.    But while the rule stated is well sustained, it can never be invoked by one creditor against another in cases where it would injuriously affect the rights of the prior creditor or third persons. The creditors favored by having two securities to look for payment can not be compelled to resort to property, though pledged to pay his debt, that belongs to another than the common debtor.    The rule is one of equity, and will not be enforced where

the effect will be to prejudice or impair the rights of third persons, it being well settled that where both parties have an equal claim to consideration of the chancellor, the law will be suffered to take its course. McClaskey & Crim vs. O'Brien, 16 W. Va. 791; Marr vs. Louis, 31 Ark. 203, S. C. 25 Am. Rep. 553; McArthur vs. Martin, 25 Minn. 74; Aldrich vs. Cooper, vol. 2, pt. 1 White & Tudor's Leading Cases in Equity, p. 78 (8 Ves. Jr. 308); Sheldon on Subrogation, sec. 65. The evidence clearly shows that the mortgage security held by the bank was to secure the claims the bank held against the firm of Roche & Co., and that the property described in the mortagge belonged to Mrs. Roche. The case as presented on the record proper before us was not one calling for the marshalling of assets of Roche & Co. between their joint creditors.

The court was in error in the rulings made, and the decree will be reversed. Ordered accordingly.