602 P.2d 810

GULF HOMES, INC., Appellee,

v.

Richard A. GOUBEAUX and Linda G. Goubeaux, his wife and each of them, Appellants.

No. 14278–PR.

Supreme Court of Arizona, In Banc.

Oct. 16, 1979.

Rehearing Denied Nov. 20, 1979.

Sando & Hardy by David T. Hardy, Ronald W. Sommer, Tucson, for appellants.

Dan A. Sinema, Tucson, for appellee.

HOLOHAN, Justice.

Appellants Richard A. and Linda G. Goubeaux petitioned this court to review the decision of the Court of Appeals, Division Two, which affirmed the judgment of the trial court in this matter. *Gulf Homes, Inc. v. Goubeaux*, 124 Ariz. 147, 602 P.2d 815 (App.1979). We granted review. The opinion of the Court of Appeals is vacated.

The essential facts pertinent to the resolution of the issues are that appellee Gulf Homes, Inc., is in the business of selling mobile homes. Appellants, as buyers, executed in Tucson, Arizona, a contract for the purchase of one of Gulf Homes' mobile homes located on a lot in Tucson. The purchase price was $9,416 plus financing charges. The sales contract required a down payment of $550 and 132 monthly installments of $145. Appellants paid the down payment, but made no further payments and subsequently abandoned the mobile home after living in it approximately two months.

By reason of appellants' default under the contract, Gulf Homes repossessed the mobile home and sought to effect its sale. A notice of sale was sent to appellants by certified mail which was returned unclaimed. Notice of the sale was posted on the mobile home, itself, in Tucson and in three places in Phoenix, Arizona. The notice of sale was also advertised in one issue of a weekly Phoenix newspaper, the Arizona Weekly Gazette. The notice of sale recited the Tucson location at which the mobile home could be viewed and the time, place, and terms of sale. The place of sale was shown to be at Gulf Homes' Phoenix office.

On the day of the sale no one appeared at the sale to bid on the property. Gulf Homes purchased the mobile home for $7,000.

Thereafter, Gulf Homes commenced an action against the appellants to recover a deficiency under the contract of $2,416. The appellants answered denying liability and counterclaimed for damages for common-law fraud, consumer fraud, violation of the Truth in Lending Act, and improper disposition of collateral.

A jury trial resulted in a verdict in favor of Gulf Homes on its claim in the sum of $1,640, and a verdict for the appellants only on their counterclaim for violation of the Truth in Lending Act in the sum of $1,000. Judgment was entered on the verdicts, and the trial court awarded $1,500 for attorney fees to Gulf Homes and $500 for attorney fees to appellants. The motion of the appellants for a new trial was denied, and this appeal followed.

Appellants raised eight issues on appeal. From our review of the issues and the record we are satisfied that all the issues were correctly resolved by the trial court except the question whether the repossession sale was conducted in accordance with the requirements of the Uniform Commercial Code.

The repossession and disposition of the chattel in this case are governed by the provisions of the Uniform Commercial Code (UCC). A.R.S. § 44–3150 sets forth the requirements to be met by a secured party to dispose of collateral after a default. Subsection C in pertinent part provides:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. . . . The secured

party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

■ The first contention of appellants is that the public sale required by A.R.S. § 44–3150(C) must be held in the presence of the collateral. Appellants rely on *Scottsdale Discount Corporation v. O'Brien*, 25 Ariz.App. 320, 543 P.2d 158 (1975) as supporting their argument that a public sale must be held in the presence of the collateral. At issue in *Scottsdale* was the sale of a repossessed mobile home under the Uniform Conditional Sales Act (a predecessor of the UCC), formerly A.R.S. § 44–301 *et seq.* The court determined that the USCA requirement of sale "at public auction" required the actual presence of the collateral at the sale unless excused by exceptional circumstances.

The UCC does not use the phrase "at public auction" but rather "public sale." The UCC does not define "public sale," but there is an inference in examining interrelated sections of the Code that the presence of the chattel is not required for a sale to be a "public sale." This is demonstrated by reference to A.R.S. § 44–3150(A) which provides that a secured party after default may sell the collateral, but any sale of the collateral is subject to the article on sales (article 2 of the UCC). Under article 2 a seller's remedies for wrongful rejection of goods or failure to make payment on delivery include resale at public sale. A.R.S. § 44–2385(D). The public sale provided by the cited section does not require that the goods be present at the time of sale as long as the notification of sale states the place where the goods are located and provides for their reasonable inspection by prospective bidders. A.R.S. § 44–2385(D)(3).

We conclude that, unlike the requirements of the old Uniform Conditional Sales Act, the successor act, the UCC, does not make the presence of the collateral at a sale a necessity for a valid repossession sale.

■ The UCC has provided a broad, rather than a per se, rule to test the validity of a disposition. The test is whether every aspect of the disposition is commercially reasonable. A.R.S. § 44–3150(C); *see C.I.T. Corporation v. Lee Pontiac, Inc.*, 513 F.2d 207 (9th Cir. 1975).

Appellants argue that the appropriate standard of commercial reasonableness to judge the sale in this case is how a dealer in mobile homes would sell its own mobile homes rather than how it would conduct a repossession sale. Secondly, appellants assert that the place of sale 125 miles distant from the location of the collateral was commercially unreasonable.

Some approved methods of conducting a sale of collateral are set forth in A.R.S. § 44–3153(B) which provides *inter alia*, that if the secured party has "sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner."

■ Since there is no statutory definition of the specific requirement necessary for a disposition to be "commercially reasonable," the determination of whether a particular sale is commercially reasonable depends upon the circumstances, and the decision is considered one of fact rather than law. *United States v. Terrey*, 554 F.2d 685 (5th Cir. 1977); *Comfort Trane Air Conditioning Co. v. Trane Co.*, 592 F.2d 1373 (5th Cir. 1979); *United States v. Conrad Publishing Co.*, 589 F.2d 949 (8th Cir. 1978); *Clark Equipment Company v. Mastelotto, Inc.*, 87 Cal.App.3d 88, 150 Cal.Rptr. 797 (1978); *Hall v. Owen County State Bank*, 370 N.E.2d 918 (Ind.App.1977); *Jones v. Morgan*, 58 Mich.App. 455, 228 N.W.2d 419 (1975).

■ We find no authority which makes it mandatory for a secured party to conduct a repossession sale in the same manner as an original sale.

The distance between the place of sale and the location of the collateral presents a more difficult issue. The sale was held approximately 125 miles from the location of the mobile home. At the time of the repossession sale, the appellee had an office in Tucson, from which the mobile home was originally sold to the appellants. In selling mobile homes in Tucson, the appellee would advertise in two major Tucson newspapers. In conducting its repossession sale, however, the appellee posted notice of the sale in Phoenix; advertised the sale in one issue of the Arizona Weekly Gazette, a weekly newspaper published in Phoenix; and then held the sale at its Phoenix office, while the mobile home remained on a lot in Tucson.

■ When suing for a deficiency, the burden of proof is upon the secured party, who must prove that disposition of the collateral was conducted in a commercially reasonable manner. *Clark Leasing Corp. v. White Sands Forest Products, Inc.,* 87 N.M. 451, 535 P.2d 1077 (1975); *FMA Financial Corp. v. Pro-Printers,* 590 P.2d 803 (Utah 1979); *Vic Hansen & Sons, Inc. v. Crowley,* 57 Wis.2d 106, 203 N.W.2d 728 (1973); *First National Bank of Bellevue v. Rose,* 188 Neb. 362, 196 N.W.2d 507 (1972); *Universal C.I.T. Credit Co. v. Rone,* 248 Ark. 665, 453 S.W.2d 37 (1970); *Mallicoat v. Volunteer Finance & Loan Corp.,* 57 Tenn.App. 106, 415 S.W.2d 347 (1966); *Investors Acceptance Co. of Livingston, Inc. v. James Talcott, Inc.,* 61 Tenn.App. 307, 454 S.W.2d 130 (1969); *Kobuk Engineering & Contracting Services, Inc. v. Superior Tank & Construction Co., Inc.,* 568 P.2d 1007 (Alas. 1977). As noted before, A.R.S. § 44–3153(B) provides that if a secured party has "sold in conformity with reasonable commercial practices among dealers in the types of property sold he has sold in a commercially reasonable manner." The only evidence presented by appellee to show that its repossession sale was consistent with the commercial practice of other mobile home dealers, consisted of the following testimony given by the president of Gulf Homes:

"Q (By Mr. Sinema) Are you familiar with the manner and way in which mobile home dealers in Arizona hold repossession sales?

"A Yes, I am.

"Q Could you describe that for us, please?

"A Well, tbey [sic] send the notice to the customer, demand notice to the customer. They then advertise it in a newspaper and then they post it, and then at that time, the date, whatever is on the posting, they hold a sale[.]

"At that time, if there is anyone there to bid on it they must have cash and only cash can buy.

"In other words, you can't sell it there on terms or anything like that. It has to be straight cash, so whoever would come in with the cash and the highest bidder would at that time become then the purchaser of the mobile home.

"Q Is it unusual to have only one bid?

"A No, it's not unusual because of the fact, as I say, this takes absolute cash, nobody can pay it on payments or anything like that, and for that reason there is not a lot of people that turn up with that kind of cash to buy a mobile home.

"Q Is it unusual for the party who possesses security interest to be the only bidder?

"A No, it's very usual, because as a rule no one shows up and then they do bid it in.

"Q After the sale is held, do you send notice and report of sale to the Goubeauxes?

"A Yes."

(RT 2–15–78, pp. 94–96)

There was no evidence presented by appellee which showed that holding a repossession sale, as well as advertising and posting notice of such, a substantial distance from the location of the mobile home, was in conformity with reasonable commercial practices of mobile home dealers. The only evidence at trial bearing on this issue consisted of the following exchange on cross-

examination of appellee's president by appellants' counsel:

"Q I believe at the time of this sale, the sale was held in your—excuse me, at the time of the repossession auction the auction itself was held in your office in Phoenix, is that correct?

"A That is correct.

"Q At that time, the mobile home itself was in a mobile home park here in Tucson, is that not correct?

"A That's correct.

"Q Could you tell me why the sale was held in your Phoenix office instead of next to the mobile home down here?

"A Well, this particular mobile home is a two-part mobile home, it's a double-wide.

"Q Yes.

"A If you tear it apart and move it, you run into a lot of expense, and of course that expense would have had to have been borne by Mr. Goubeaux; furthermore incur a lot more expense, and so for elimination of expense and convenience, that was the way it was done, probably save him—Mr. Goubeaux—probably about a thousand dollars or better.

"Q Rather than moving the mobile home to Phoenix to sell it, did you consider moving the sale to the mobile home in Tucson?

"A Well, I think this was done for convenience all the way around.

"Q That being your convenience, I take it?

"A Well, it's convenience of saving the trip, saving money, and it was properly advertised and noted and offered to people to look at, and then we didn't even have one call on it."

(RT 2-15-78, pp. 136-137)

■ The decision of reasonableness is usually one of fact to be resolved by the trier of fact. Here, however, appellee failed to present any creditable evidence which would sustain a jury verdict that the sale was commercially reasonable. No evidence was presented showing that sale of a mobile home located a substantial distance from the place of sale was consistent with reasonable commercial practices of mobile home dealers. Absent a showing of commercial practices to the contrary, the circumstances indicate that the sale should have been advertised, noticed, and sold in Tucson where the mobile home was available for inspection. The location of the chattel was in a metropolitan area with a population in excess of 350,000 people. The area is a major trade center for the southern part of the state. Notices and advertising in Phoenix some 125 miles away would not have much efficacy in producing buyers in Tucson. As the testimony shows, any buyer in Phoenix would be faced with an additional expense of "probably about a thousand dollars or better" to move the mobile home to Phoenix.

The evidence presented at trial failed to establish that the collateral was disposed of in a manner commercially reasonable.

The judgment of the superior court in favor of appellee Gulf Homes on its claim for a deficiency and for an award of attorney fees is reversed. The order and judgment of the superior court denying damages and a new trial to appellants on their counterclaim for a commercially unreasonable sale of collateral is reversed. The judgment of the superior court on the remaining issues is affirmed. The case is remanded to the superior court for further proceedings consistent with this opinion.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.