449 So.2d 301 (1984)
SAC CONSTRUCTION COMPANY, INC. and Par-Cap, Inc., Appellants,
v.
EAGLE NATIONAL BANK OF MIAMI, Guillermo Muller, As Trustee, Jorgelina Muller, Beach Ocean Walk, Inc., and Gillett Plumbing, Appellees.
No. 82-2597.
District Court of Appeal of Florida, Third District.
March 13, 1984.
Rehearing Denied May 23, 1984.
Heller & Kaplan and Seymour Kaplan, Miami, for appellants.
*302 Schwartz & Nash and Dale A. Heckerling, Miami, Spencer, Hass-Perlman, Hoffman, Bloom & Bernstein, Coral Gables, for appellees.
Before SCHWARTZ, C.J., and NESBITT and DANIEL S. PEARSON, JJ.
NESBITT, Judge.
SAC Construction Company, Inc. (SAC) and PAR-CAP, Inc. (PAR-CAP) appeal a summary final judgment foreclosing a mortgage on real property in favor of Eagle National Bank of Miami (Bank). We affirm.
On October 9, 1979, Muller executed and delivered a promissory note to PAR-CAP in the sum of $616,000, which was secured by a purchase money mortgage on a piece of hotel property. Some time later, Muller decided to convert the hotel to a condominium. In connection with the financing of this new project, Muller, his wife, and Beach Ocean Walk, Inc. (a corporation of which Muller was the president) (Beach) executed a note in the principal amount of $735,000 to the Bank. As security for the note, the Mullers executed a mortgage on the hotel property (which was already subject to the PAR-CAP mortgage) and on their residence. Because the Bank as part of its commitment to provide financing required that its lien be superior to others, the Mullers persuaded PAR-CAP to subordinate its lien to that of the Bank. The Mullers and Beach later increased the indebtedness to the Bank by executing a second note for $50,000. Subsequently, both of the notes held by the Bank became in default.
In the meantime, SAC had been hired by Muller to perform the construction work on the property. With an unpaid balance of $166,000 due SAC, it filed an action to enforce its mechanic's lien against the property. Named as defendants were Muller, Beach[1] and the Bank. The Bank filed its answer and counterclaim against SAC, PAR-CAP and other mechanic's lienors alleging that its mortgage should be declared superior to the other claims. It also cross-claimed against Muller and Beach seeking to foreclose on the mortgage and filed a separate action to foreclose on the Mullers' residence.
Muller and Beach responded with a counterclaim against SAC for breach of contract and slander of title. As to the Bank, Muller and Beach raised the affirmative defense that the Bank was barred from foreclosure by its failure to comply with its letter of commitment. Additionally, they asserted a claim against the Bank seeking damages in the amount of $900,000.
PAR-CAP responded to the Bank's counterclaim with its own counterclaim against SAC and Muller to foreclose on its mortgage. A judgment on the pleadings was entered against PAR-CAP in favor of the Bank based on the subordination agreement.
In this posture, with the various lienors competing to gain superior rights and Muller denying liability, the Bank filed a motion for summary judgment. Its motion was granted determining that the Bank had a lien which was superior to the claim of any party to the action. The court ordered that the condominium property be sold to satisfy the amounts due.
SAC filed a motion for rehearing and a motion for stay of sale, arguing, inter alia, that the counterclaims and affirmative defenses pending against the Bank raised issues of fact precluding summary judgment, and that the Bank should be required to go against the Mullers' residence prior to foreclosing on the property encumbered by SAC's lien. In response to these motions, the Bank for the first time divulged the fact that it had entered into a settlement agreement with the Mullers, one day before the summary judgment was granted. The terms of the agreement were as follows: (a) Muller would not contest the entering of a judgment in favor of the Bank for $866,684; (b) the Bank would not seek a deficiency decree against Muller and *303 otherwise released Muller from all liability; (c) Muller withdrew his claim against the Bank by which he had sought $900,000 in damages; (d) the separate action to foreclose on the Mullers' residence was withdrawn.
At this point, PAR-CAP filed a motion for rehearing arguing that the stipulation, which was unknown to the other parties involved in the lawsuit, was fraudulent. The motions for rehearing were denied, but an amended final judgment was entered to correct the legal description of the property. SAC then filed a second motion for rehearing and for relief from judgment challenging the settlement and release between Muller and the Bank.
Four issues are raised by SAC and PAR-CAP: (1) There were issues of fact presented by Muller's affirmative defenses and counterclaims. (2) The Bank should have been required to marshal Muller's assets. (3) Muller's release of his claim for $900,000 was fraudulent as to the lienors. (4) The Bank's release of Muller, his wife and Beach terminated the Bank's right to foreclose on the mortgage.
At the outset we observe that SAC filed a notice of appeal from the adverse summary judgment prior to the lower court's ruling on its second motion for rehearing. By doing so, it has abandoned its motion for rehearing, State v. Pearson, 156 So.2d 4 (Fla. 1963), and may not argue issues which were raised for the first time in the second motion. Thus, SAC is precluded from challenging the propriety of the summary judgment as it relates to the stipulation. Since the first two issues argued in this appeal were presented by SAC in its first motion for rehearing, they will be considered as to both creditors.
The first issue raised by SAC and PAR-CAP is that there were material issues of fact presented by Muller's affirmative defenses. They argue that the Bank's failure to disprove these affirmative defenses precluded the entry of a summary judgment against SAC and PAR-CAP. While we agree that the movant must disprove or establish the legal insufficiency of an affirmative defense, Puritan Insurance Co. v. Frank, 436 So.2d 1140 (Fla. 3d DCA 1983); Wilson v. Pruette, 422 So.2d 351 (Fla. 2d DCA 1982); Allstate Insurance Co. v. Arvida Corp., 421 So.2d 741 (Fla. 4th DCA 1982), we note that the affirmative defenses were raised by Muller only. Neither SAC nor PAR-CAP filed any affirmative defenses and accordingly they must be deemed waived. Fla.R.Civ.P. 1.140.
The second issue arguable by both appellants is that the Bank should have been required to marshal the Mullers' assets. The equitable doctrine of marshaling rests on the principle that where a creditor has two funds from which he can satisfy his debt, he may be compelled to go against the one to which he has an exclusive right, leaving the other to the creditor who can resort to it alone. State Bank of Florida v. Roche, 35 Fla. 357, 17 So. 652 (1895). Generally, the doctrine will only be applied where the parties are creditors of the same debtor, there are two funds belonging to the common debtor and only one creditor has the right to resort to both funds.
As applied to this case, the appellants argue that since the Bank had both the house and the condominium property from which to satisfy the debt, and the other creditors had only the condominium property, the Bank should have been required to resort to the house first before eliminating the sole property in which the other lienors had a security interest. Having failed to do so, the argument continues, the trial court was required to reduce the amount of the Bank's recovery by the value of the residence.
We find the doctrine of marshaling to be inapplicable on the facts before us because the parties are not creditors of the same debtor. The mortgage being foreclosed by the Bank was security for a note executed by Muller, his wife and Beach. The mortgage being foreclosed by PAR-CAP was executed only by Mr. Muller and SAC's claim of lien was against Muller and Beach.
As to the propriety of the stipulation, PAR-CAP raises two issues, both of which are readily disposed of. First, it *304 claims that Muller's release of his claim against the Bank for $900,000 was fraudulent as to the creditors and that the Mullers' indebtedness to the Bank should be reduced by that sum. We fail to see how this action could be deemed fraudulent. The fact that the debtor released his claim against the creditor in exchange for the debtor's discharge from liability may secure an advantage for this creditor over others, but it does not render the transaction fraudulent. See Smith v. Hunter, 115 Fla. 698, 155 So. 805 (1934).
As a second point, PAR-CAP argues that the release of personal liability operated to divest the Bank of the right to seek foreclosure on the properties. It is axiomatic that a contract is to be construed in accordance with the intention of the parties as ascertained from the language of the contract. Rylander v. Sears Roebuck & Co., 302 So.2d 478 (Fla. 3d DCA 1974). Since it is apparent from the face of the stipulation that the parties intended that foreclosure would occur, it is immaterial that the mortgagee has released its right to a deficiency judgment. See MacArthur v. Merwitzer, 180 So.2d 164 (Fla. 3d DCA 1965).
Based on the foregoing, we affirm.
NOTES
[1] Beach Ocean Walk, Inc. had become the fee simple owner of the property by virtue of a quit-claim deed from Muller.