904 P.2d 530

## GECC FINANCIAL CORPORATION, Plaintiff–Appellee,

v.

## Lois I. JAFFARIAN and Becky H. Pillard, Defendants– Appellants.

### No. 16397.

Intermediate Court of Appeals of Hawai'i.

Aug. 10, 1995.

Certiorari Granted Aug. 31, 1995.

518

Edward C. Kemper (Kemper & Watts, of counsel), on the briefs, Honolulu, for defendants-appellants.

David C. Farmer, Lyle M. Ishida and Stephen M. Teves (Case & Lynch, of counsel), on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

WATANABE, Judge.

In this deficiency judgment action, Defendants–Appellants Lois I. Jaffarian (Lois) and Becky H. Pillard (Becky) (collectively, Appellants) appeal from an adverse summary judgment, contending that the circuit court erred in two respects.

First, Appellants argue that the circuit court improperly granted summary judgment in favor of Plaintiff–Appellee GECC Financial Corporation (GECC) because genuine issues of material fact exist as to: (1) whether GECC properly mitigated its damages by disposing of repossessed leased vehicles "in a commercially reasonable manner in accordance with accepted practices in the automobile industry for determining the value of used vehicles" (mitigation issue); and (2) whether there was an oral agreement that if Appellants voluntarily returned the vehicles, GECC would refrain from pursuing further claims against Appellants (forbearance issue).

Second, Appellants contend that the circuit court abused its discretion in awarding GECC attorneys' fees because the amount awarded was unreasonable under the circumstances.

We conclude that the circuit court improperly granted summary judgment to GECC because GECC failed to meet its burden of producing support for its claim that no genuine issue of material fact existed as to the mitigation issue and that it was therefore entitled to summary judgment as a matter of law. Accordingly, we vacate the judgment, as well as the underlying order granting summary judgment. Our disposition of this appeal renders it unnecessary to address the attorneys' fees issue.

## I. BACKGROUND

On November 11, 1987, Kevin P. Pillard (Kevin),[1] as attorney-in-fact for Ruby A. Jaffarian (Ruby), entered into a New Vehicle Lease Agreement[2] with Dolphin Leasing Corp. (Dolphin) to lease, for sixty months, a 1988 Mercedes Benz 420 SEL four-door sedan (Mercedes). On March 8, 1988, Kevin, as attorney-in-fact for Ruby, entered into a second lease agreement[3] with Dolphin to lease, for sixty months, a 1988 GMC model C 1500 four-wheel-drive pickup truck (GMC). Pursuant to a Continuing Guaranty dated December 10, 1987, Lois and Becky personally guaranteed Ruby's payments under the leases. Dolphin subsequently assigned all rights, title, and interests in both leases to GECC.

Ruby died on May 22, 1991, and the leases fell into default. After Appellants failed to pay the amounts due under the leases, GECC, on August 7, 1991, instructed Hawaii Recovery Bureau, Inc. (HRBI), a repossession company, to retrieve the Mercedes and the GMC. When an HRBI representative showed up at Kevin's office to pick up the vehicles, Kevin indicated that he wanted to talk to a GECC representative before releas-

1. The pleadings in the record indicate that Kevin P. Pillard is the husband of Defendant–Appellant Becky H. Pillard and the son-in-law of Defendant–Appellant Lois I. Jaffarian.

2. Under the terms of the lease, Ruby A. Jaffarian (Ruby) paid an initial security deposit of $1,000 and a deposit of one month's rent of $954.88. Ruby also agreed to make monthly payments of $954.88 over a sixty-month period, for a total of $57,286.20, and agreed to pay when due all official fees and taxes imposed by any governmental authority in connection with the lease, estimated to amount to $2,625 over the life of the lease. The residual wholesale value of the Mer-

cedes at the termination of the lease was estimated to be $24,875.

3. Pursuant to the terms of the lease, Ruby initially paid a security deposit of $400 and the first monthly lease payment of $388.86. Ruby also agreed to make sixty monthly lease payments of $388.86, for a total of $23,332.60, and to pay all official fees and taxes imposed by any governmental authority in connection with the lease, estimated to total $1,125 over the lease period. The residual wholesale value of the GMC at the termination of the lease was estimated to amount to $4,700.

ing the vehicles. He subsequently contacted David Farmer (Farmer), the attorney for GECC, in an attempt to "work something out." According to Kevin, Farmer told him to either return the vehicles immediately or GECC would sue on the leases.

Rather than face litigation, Kevin, after consulting with Appellants, contacted an HRBI representative to arrange for the return of the vehicles. Kevin stated that it was his understanding that GECC would not file suit for possession or for the deficiency if both vehicles were returned. HRBI picked up the Mercedes on August 12, 1991 and the GMC on August 19, 1991, and returned both vehicles to GECC. In the meantime, however, on August 15, 1991, GECC filed the instant action against Appellants, demanding the amounts due under the terms of the lease agreements and the immediate return of the vehicles. Kevin learned of the lawsuit from the *Pacific Business News.*

Under the terms of both lease agreements, the valuation of each vehicle upon early termination was to be determined according to the following provision:

### N. VEHICLE VALUATION AT EARLY TERMINATION, DEFINITION OF REALIZED VALUE

*If I do not purchase the vehicle, my early termination liability will be affected by the Realized Value of the Vehicle. The Realized Value may be determined in one of the following ways: (i) By a written agreement between you [lessor] and me [lessee] if it is signed 10 days prior to termination; (ii) By a professional appraisal obtained at my expense of the wholesale value of the vehicle 10 days prior to termination if you and I can each agree to my selection of an independent third party qualified to make the appraisal; or (iii) if the Realized Value is not determined by termination you [lessor] will determine Realized Value in a commercially reasonable manner in accordance with accepted practices in the automobile industry for determining the value of used vehicles.*

I understand that the Realized Value amount will be exclusive of any official fees and taxes imposed upon vehicle disposition.

Record on Appeal (R.A.) at 10, ¶ 1.N. (italicized text in original; emphasis added).

Utilizing the third method for determining "Realized Value," GECC appraised the vehicles for resale and solicited three bids for each vehicle from other leasing companies and used car dealers.

On August 14, 1991, GECC received bids for the Mercedes from So Easy Leasing & Sales (So Easy), Rainbow Chevrolet, Inc. (Rainbow), and Sierra Leasing & Sales (Sierra) for $26,500, $24,000, and $22,500, respectively. Eventually, however, GECC sold the Mercedes to a private individual for $31,700 and credited this amount to Appellants' account. At the time, the Kelley Blue Book (Blue Book) established the approximate wholesale value of the Mercedes at $33,000 and the approximate retail value at $41,100.

On August 19, 1991, GECC also received three bids for the GMC from So Easy, Rainbow, and Sierra for $8,500, $9,000, and $8,200, respectively. GECC ultimately kept the GMC for use in its rental pool and credited $9,400 to Appellants' account. The GMC's Blue Book wholesale value at the time was approximately $8,050, while its retail value was approximately $10,700.

On December 5, 1991, GECC filed a motion for summary judgment, seeking a deficiency judgment against Appellants, jointly and severally, for the following amounts: $12,566.96, plus interest at the per diem rate of $3.3919, for the Mercedes; and $3,929.19, plus interest at the per diem rate of $1.0523, for the GMC. On July 21, 1992, the circuit court granted the motion and entered final judgment in favor of GECC and against Appellants on all claims, finding them jointly and severally liable to GECC for a total of $20,872.24, including costs and attorneys' fees, plus interest.[4]

Appellants thereafter filed the instant appeal.

---

**4.** Appellants were liable to GECC for $16,496.15, plus $4,065.15 in attorneys' fees and $310.94 in costs.

## II. DISCUSSION

### A. Summary Judgment: Burden and Standard of Proof; Standard of Appellate Review

■ Summary judgment is a drastic remedy. To avoid improperly depriving a party to a lawsuit of the right to a trial on disputed factual issues, summary judgment must be "cautiously invoked." *Miller v. Manuel*, 9 Haw.App. 56, 65–66, 828 P.2d 286, 292 (1991), *cert. denied*, 72 Haw. 618, 841 P.2d 1075 (1992). Summary judgment should only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any (hereinafter "relevant materials"), show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (1990).

■ The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. *First Hawaiian Bank v. Weeks*, 70 Haw. 392, 396, 772 P.2d 1187, 1190 (1989); 6 J. Moore, *Moore's Federal Practice* (hereinafter *Moore's Federal Practice*) ¶ 56.15[3] at 56–249—56–250 (2d ed. 1995). This burden has two components.

■ First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions, *Miller*, 9 Haw.App. at 65, 828 P.2d at 292; HRCP Rule 56(c); and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. *Rodriguez v. Nishiki*, 65 Haw. 430, 438, 653 P.2d 1145, 1150, *reconsideration denied*, 65 Haw. 682 (1982); HRCP Rule 56(c). Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial. C.

Wright, A. Miller & M. Kane, 10A *Federal Practice and Procedure: Civil 2d* (hereinafter *Wright's Federal Practice*) § 2727, at 148 (1983).

■ Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 332, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting); M. Nelken, *One Step Forward, Two Steps Back: Summary Judgment After Celotex*, 40 Hastings L.J. 53, 55 n. 9 (1989); G. Foremaster, *The Movant's Burden in a Motion for Summary Judgment*, 1987 Utah L.Rev. 731, 734–35.

■ The moving party's burden of proof is a stringent one, since the inferences to be drawn from the underlying facts alleged in the relevant materials considered by the court in deciding the motion must be viewed in the light most favorable to the non-moving party, *Fernandes v. Tenbruggencate*, 65 Haw. 226, 228, 649 P.2d 1144, 1147 (1982), and any doubt concerning the propriety of granting the motion should be resolved in favor of the non-moving party. *Wright v. Fireman's Fund Ins. Cos.*, 11 Cal.App.4th 998, 1011, 14 Cal.Rptr.2d 588, 595 (1992); 10 *Wright's Federal Practice* § 2716, at 643–46.

■ The evidentiary standard required of a moving party in meeting its burden on a summary judgment motion depends on whether the moving party will have the burden of proof on the issue at trial. 6 *Moore's Federal Practice* § 56.15[3] at 56–266—56–267; M. Nelken, 40 Hastings L.J. 53, 55 n. 9 (1988); Foremaster, 1987 Utah L.Rev. 731, 735–36.

■ Where the moving party is the plaintiff, who will ultimately bear the burden of proving plaintiff's claim at trial, the plaintiff must: (1) establish, by the quantum of evidence required by the substantive law, each element of its claim for relief, *Beamer v. Nishiki*, 66 Haw. 572, 578, 670 P.2d 1264, 1270 (1983); and (2) disprove every affirma-

tive defense asserted against it. *Wright,* 11 Cal.App.4th at 1011–12, 14 Cal.Rptr.2d at 595; *SAC Constr. Co. v. Eagle Nat'l Bank,* 449 So.2d 301 (Fla.App.1984). In disproving an affirmative defense for summary judgment purposes, the plaintiff's evidentiary standard is similar to the evidentiary standard of a defendant moving for summary judgment on the plaintiff's claims. Therefore, the plaintiff is required to either: (1) produce relevant materials that negate an element essential to the affirmative defense, *Weeks,* 70 Haw. at 396–97, 772 P.2d at 1190; 6 *Moore's Federal Practice* ¶ 56.15[3] at 56–268; or (2) demonstrate that if the case went to trial, there would be no competent evidence to support a judgment for the defendant on the affirmative defense. *Weeks,* 70 Haw. at 396–97, 772 P.2d at 1190.

■ On appeal, an award of summary judgment is reviewed under the same standard applied by the trial court. *Wong–Leong v. Hawaiian Indep. Refinery,* 76 Hawai'i 433, 438, 879 P.2d 538, 543 (1994). This involves a three-step analysis:

> First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond....

> Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. The motion must stand self-sufficient and cannot succeed because the opposition is weak. A party cannot succeed without disproving even those claims on which the opponent would have the burden of proof at trial.

> When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the op-

position demonstrates the existence of a triable, material factual issue. Counter-affidavits and declarations need not prove the opposition's case; they suffice if they disclose the existence of a triable issue.

*AARTS Productions, Inc. v. Crocker Nat'l Bank,* 179 Cal.App.3d 1061, 225 Cal.Rptr. 203, 205–06 (1986) (citations omitted). *See also Wright,* 11 Cal.App.4th at 1012, 14 Cal. Rptr.2d at 595.

We review the summary judgment granted in GECC's favor under this analytical framework.

### B. The Summary Judgment in GECC's Favor

#### 1. The Issues Framed by the Pleadings

GECC's complaint for relief was fairly simple. It alleged that Appellants had defaulted on their guaranty of Ruby's two leases and were thus liable to GECC for the amount of Ruby's deficiency.

■ The sole affirmative defense pleaded by Appellants in their answer [5] was that GECC had failed to properly mitigate its damages under the terms of the leases, which required GECC to dispose of the vehicles in a commercially reasonable manner in accordance with accepted trade practices in the automobile industry. In their memorandum in opposition to GECC's motion for summary judgment, Appellants explained that GECC "essentially gave away the vehicles," which "were worth well in excess of [the amount] GECC sold them for," and that "if GECC had used any effort whatsoever, they [sic] could have paid their [sic] entire claim." R.A. at 63.

---

5. In opposing GECC's motion for summary judgment, Appellants contended that a genuine issue of material fact existed as to whether GECC had orally agreed to refrain from pursuing further claims against Appellants if they voluntarily returned the leased vehicles (forbearance issue). Because Appellants did not raise the forbearance issue as an affirmative defense in their answer, however, GECC could not have been expected to anticipate and negate the defense in its motion for summary judgment.

However, if Appellants had properly alleged forbearance as an affirmative defense in their

answer, our review of the record indicates that partial summary judgment in GECC's favor on this defense would probably have been appropriate. It appears undisputed that no valid consideration existed for the alleged oral forbearance agreement. Accordingly, the agreement, even if it existed, was unenforceable as a matter of law. *Sylvester v. Animal Emergency Clinic,* 9 Haw. App. 85, 91, 823 P.2d 745, 749 (1990), *rev'd on other grounds,* 72 Haw. 560, 825 P.2d 1053 (1992); *Honolulu Fed. Sav. & Loan Ass'n v. Murphy,* 7 Haw.App. 196, 204–05, 753 P.2d 807, 813 (1988).

Although the mitigation issue was pleaded as an affirmative defense, we agree with the majority of jurisdictions which hold that in an action by a creditor to recover on a deficiency judgment, the burden is on the creditor to prove that its disposition of repossessed collateral was conducted in a commercially reasonable manner. *See, e.g., Gulf Homes, Inc. v. Goubeaux,* 124 Ariz. 142, 145, 602 P.2d 810, 813 (1980), *appeal after remand,* 136 Ariz. 33, 664 P.2d 183 (1983); *Hall v. Owen County State Bank,* 175 Ind. App. 150, 370 N.E.2d 918, 929 (1977); *Villella Enters., Inc. v. Young,* 108 N.M. 33, 35, 766 P.2d 293, 295 (1988); *Gordon & Assoc. v. Cullen Bank/Citywest,* 880 S.W.2d 93 (Tex. App.1994). *See also* Annotation, *Uniform Commercial Code: Burden of Proof as to Commercially Reasonable Disposition of Collateral,* 59 A.L.R.3d 369 (1974); M. Donaldson, *The Commercially Reasonable Disposition of Collateral Under Article 9 of the UCC: The Question of the Burden of Proof,* 20 U.C.C. L.J. 307 (1988).

In order to prevail on its summary judgment motion, therefore, GECC had the burden of establishing that: (1) no genuine issue existed as to whether its disposition of the leased vehicles was commercially reasonable and in accordance with accepted practices in the automobile industry for determining the value of used vehicles; and (2) based on the undisputed facts and the substantive law, it was entitled to judgment as a matter of law.

### 2. *The Facts Established by GECC*

In support of its motion for summary judgment, GECC submitted the following materials:

■ 1. The two leases [6] between Ruby and Dolphin, which, by their terms, allowed the leases to be assigned to GECC, and included the provision requiring GECC, upon early termination of the leases, to determine the value of the vehicles "in a commercially reasonable manner in accordance with accepted practices in the automobile industry for determining the value of used vehicles";

2. The Continuing Guaranty, by which Appellants personally guaranteed payment by Ruby under the Mercedes lease and "any prior or subsequent lease agreement entered into between [Ruby] and [GECC]";

3. The deficiency billings sent to Appellants, informing them of the amounts due under the two leases;

4. An affidavit by Mary J. Recca (Recca), the Assistant Vice–President of GECC who was primarily responsible for dealing with Ruby's account, attesting to the fact that Appellants had defaulted on their guaranty obligations "by neglecting, failing, and refusing to pay the deficiency, despite demand therefor"; and

5. A second affidavit by Recca setting forth the procedure by which GECC repossessed and disposed of the leased vehicles and stating the amounts which GECC received upon disposition of the leased vehicles. In this affidavit, Recca explained that:

> [b]ecause GECC is not in the retail auto selling business, it disposes of repossessed or returned leased vehicles, consistent with accepted trade practice, by soliciting bids from other leasing companies or used car dealers. These bids usually approximate Kelley Blue Book wholesale values, depending upon the condition of the vehicle.

■ The foregoing materials demonstrated, without question, that Appellants had personally guaranteed Ruby's payments to GECC under the two leases but had failed, upon Ruby's death, to pay Ruby's remaining

---

**6.** The parties do not dispute that the lease agreements in question are not security agreements, which are subject to article 9 of the Hawai'i Uniform Commercial Code (HUCC), Hawai'i Revised Statutes (HRS), chapter 490. Both leases include the following provision: "I acknowledge that this is a true lease and I will have absolutely no equity or other ownership rights in the vehicle or its replacement parts unless I exercise the purchase option." Record on Appeal (R.A.) at 45, 49, ¶ L. Thus, the leases are governed by principles of contract law, rather than by article 9 of the HUCC. *Cho Mark Oriental Food, Ltd. v. K & K Int'l,* 73 Haw. 509, 519, 836 P.2d 1057, 1063 (1992).

Article 2A of the HUCC, which covers leases, was adopted by the Hawai'i legislature in 1991 but did not become effective until January 1, 1992. Act 40, 1991 Haw.Sess.Laws 55. The default in this case occurred in 1991 and the parties do not dispute that article 2A is not controlling in this case.

debt. These undisputed facts clearly established, as a matter of substantive law, that Appellants were liable to GECC under their guaranty for the amount of Ruby's remaining debt.

Under the leases, however, GECC's entitlement to a deficiency judgment from Appellants was dependent on the realized value of the leased vehicles upon termination of the leases, and the realized value was to be determined "in a commercially reasonable manner in accordance with accepted practices in the automobile industry for determining the value of used vehicles." R.A. at 10, ¶ 1.N.

■ The leases in question neither define the term "commercially reasonable," nor provide any guidance as to how GECC is to carry out its obligation to dispose of the leased vehicles in a "commercially reasonable" manner. Because the term is vague, whether a particular sale is commercially reasonable will depend on the circumstances of the particular case,[7] a determination which most courts have held is a question of material fact inappropriate for summary judgment resolution. *Comfort Trane Air Conditioning Co. v. Trane Co.*, 592 F.2d 1373, 1386 (5th Cir.1979); *United States v. Conrad Publishing Co.*, 589 F.2d 949, 954 (8th Cir.1978); *Liberty Nat'l Bank & Trust Co. v. Acme Tool*, 540 F.2d 1375, 1381–82 (10th Cir.1976); *California Airmotive Corp. v. Jones*, 415

F.2d 554, 556 (6th Cir.1969); *Gulf Homes, Inc.*, 124 Ariz. at 144, 602 P.2d at 812; *Clark Equipment Co. v. Mastelotto, Inc.*, 87 Cal. App.3d 88, 96, 150 Cal.Rptr. 797, 802 (1978); *Gangelhoff v. Transamerica Commercial Fin. Corp.*, 611 So.2d 1333 (Fla.App.1993); *Hall*, 370 N.E.2d at 929; *Jones v. Morgan*, 58 Mich.App. 455, 458, 228 N.W.2d 419, 422 (1975); *Gordon & Assoc.*, 880 S.W.2d at 96.

■ The leases also required GECC to dispose of the returned leased vehicles "in accordance with accepted practices in the automobile industry for determining the value of used vehicles." To prove that it had complied with this requirement, GECC attached an affidavit by Recca, attesting that "[b]ecause GECC is not in the retail auto selling business, it disposes of repossessed or returned leased vehicles, consistent with accepted trade practice, by soliciting bids from other leasing companies or used car dealers. These bids usually approximate Kelley Blue Book values, depending upon the condition of the vehicle."

■ Pursuant to HRCP Rule 56(c), however, affidavits in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

---

**7.** Pursuant to section 9–504 of the Uniform Commercial Code (UCC), a secured party disposing of collateral after a default by a debtor is obligated to dispose of the collateral in a "commercially reasonable" manner.

In determining whether the UCC standard of commercial reasonableness has been met in a particular case, courts have considered a number of factors and circumstances, including the following:

  1) the nature of the collateral;
  2) the price received for the item or items sold;
  3) the number of bids solicited and received;
  4) the fair market value of the collateral;
  5) the reasonableness of the conduct of the sale, e.g., whether the collateral was present, the time and place of the sale, the nature and extent of advertising the number of prospective buyers, and whether the sale was public or private;
  6) whether the item was sold on the wholesale or retail market;
  7) whether the secured party itself repurchased the item;

  8) the recognized market for the items sold;
  9) the usual manner in which the items are sold in the recognized market;
  10) the current prices in the recognized market at the time that the creditor conducted the sale; and
  11) the reasonable commercial practices among dealers for the items sold.
*See, e.g., Hall v. Owen County State Bank*, 175 Ind.App. 150, 370 N.E.2d 918 (1977); *Villella Enters. v. Young*, 108 N.M. 33, 766 P.2d 293 (1988); *Gordon & Assoc. v. Cullen Bank/Citywest*, 880 S.W.2d 93 (Tex.App.1994); *see also* Annotation, *What is "Commercially Reasonable" Disposition of Collateral Required by UCC § 9–504(3)*, 7 A.L.R.4th 308 (1981); Annotation, *Uniform Commercial Code: Burden of Proof as to Commercially Reasonable Disposition of Collateral*, 59 A.L.R.3d 369 (1974); Donaldson, *The Commercially Reasonable Disposition of Collateral Under Article 9 of the UCC: The Question of the Burden of Proof*, 20 U.C.C.L.J. 307 (1988).

Consequently, affidavits which state ultimate or conclusory facts or conclusions of law cannot be utilized in support of a motion for summary judgment. *Miller,* 9 Haw.App. at 66, 828 P.2d at 292.

Recca's affidavit, which concluded, without any underlying factual basis, that GECC's manner of disposing of repossessed or returned leased vehicles was "consistent with the accepted trade practices," failed to demonstrate how, as an employee of a *financial* institution, Recca had personal knowledge of and was competent to testify about the accepted trade practices of the *automobile* industry.

██ The relevant materials produced by GECC in support of its motion for summary judgment thus demonstrated that a genuine issue of material fact still existed as to whether GECC's disposition of the leased vehicles was "commercially reasonable" and "in accordance with the accepted practices in the automobile industry for determining the value of used vehicles," an essential element of its claim for a deficiency judgment. GECC thus failed to establish that it was entitled to summary judgment as a matter of law, and it is unnecessary for us to proceed to the third prong of the summary judgment analytical framework.

## III. *CONCLUSION*

Based on the foregoing discussion, we vacate: (1) the July 21, 1992 Judgment Against Appellants, and (2) the underlying Order Granting GECC's Motion for Summary Judgment, dated July 21, 1992. We also remand this case for further proceedings consistent with this opinion.

ACOBA, Judge, concurring.

I agree that GECC, as the creditor, had the burden of proving that its disposition of repossessed collateral was conducted in a commercially reasonable manner and that the affidavits regarding the sale of the lease vehicles failed to establish disposition of the vehicles in such a manner. However, with all due respect to the majority, I do not see the desirability of requiring a plaintiff, moving for summary judgment, to "disprove every affirmative defense asserted against it" as part of its initial burden. *See* majority at 535 (citing *Wright v. Fireman's Fund Ins. Cos.,* 11 Cal.App.4th 998, 1011–12, 14 Cal.Rptr.2d 588, 595 (1992); *SAC Constr. Co. v. Eagle Nat'l Bank,* 449 So.2d 301, 303 (Fla.Dist.Ct. App.1984). This requirement, which appears to be altogether new to our jurisdiction and based on California and Florida cases, appears to me to be counter-productive.[1]

A party opposing summary judgment cannot rest on its pleadings if the moving party has satisfied its obligation of showing there is no genuine issue of material fact and it is entitled to a judgment as a matter of law. *Miller v. Manuel,* 9 Haw.App. 56, 65, 828 P.2d 286, 292 (1991). In a practical sense, the movant's burden amounts to establishing a prima facie case for relief. 10A C. Wright, A. Miller, & M. Kane, *Federal Practice & Procedure: Civil* § 2727, at 143 (2d ed. 1983). However, in situations where the moving party has failed to meet its burden, or its papers indicate that a genuine issue exists, the nonmoving party does not have to present affidavits or evidence countering the motion. *Id.* at 138–42. Thus, the nonmoving party does not have to respond to a summary judgment motion if the movant fails to meet its burden because the motion will only be granted by the court "if appropriate[.]" Hawai'i Rules of Civil Procedure Rule 56(e).[2]

---

1. In California, " '[w]hen the moving party is the plaintiff, the burden is to prove every element necessary to establish its right to the relief it seeks and to disprove every affirmative defense asserted against it.' " *Wright v. Fireman's Fund Ins. Cos.,* 11 Cal.App.4th 998, 1011–12, 14 Cal. Rptr.2d 588, 595 (1992) (quoting *United Community Church v. Garcin,* 231 Cal.App.3d 327, 338, 282 Cal.Rptr. 368, 376 (1991)). Florida courts require "that the movant must disprove or establish the legal insufficiency of an affirmative de-

fense[.]" *SAC Constr. Co. v. Eagle Nat'l Bank,* 449 So.2d 301, 303 (Fla.Dist.Ct.App.1984).

2. Hawai'i Rules of Civil Procedure (HRCP) Rule 56(e) reads in pertinent part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts

I believe we can validly assume that where the plaintiff moves for summary judgment, and properly establishes the lack of a genuine issue of material fact and its entitlement to a judgment as a matter of law, i.e. a prima facie case, and the defendant fails to respond, the trial court will have little difficulty in granting the plaintiff's motion even if the plaintiff does not disprove every affirmative defense raised by the defendant in its pleadings.

Placing an initial burden on the plaintiff to "disprove every affirmative defense[3] asserted against it" has several practical effects, none of which appear to me to be helpful in promoting the speedy and economical disposition of non-viable issues. First of all, the plaintiff will be put to the time and expense of initially disproving an issue on which the defense has the burden of proof at trial, but upon which such proof may ultimately be lacking. It would seem to me that in the allocation of burdens, the burden of producing materials regarding an affirmative defense in a summary judgment proceeding should be placed upon the defendant. If the defendant lacks such evidence then in all probability the defense will not be raised in opposition to the plaintiff's motion. If, on the other hand, there is evidence in support of the defense, what party is more suited to present the defense in all its permutations and contours than the defendant? If this task is left to the defendant, then the court and the plaintiff may be afforded the information essential to make a realistic appraisal of the defense, and the appropriate action to take—granting summary judgment or partial summary judgment, denial of the motion, or conceivably, the refinement of a subsequent motion for summary or partial summary judgment—will be evident.

We may reasonably expect that where affirmative defenses have been raised *pro forma*, they will, if not supported by evidence at the time of the plaintiff's motion, simply be abandoned. *See K.M. Young & Assoc. v. Cieslik*, 4 Haw.App. 657, 663–66, 675 P.2d 793, 799–800 (1983) (affirming award of summary judgment where nonmoving party raised the affirmative defense of usury in its memorandum in opposition to the motion without showing facts which would establish the elements of usury). It is also conceivable that in establishing a prima facie case, the plaintiff will also expose weaknesses in certain defenses or affirmative defenses, which the defendant will then, for strategic reasons, discard. This newly added requirement, however, suggests to the plaintiff that before filing its motion for summary judgment, it must conduct an investigation and discovery of every affirmative defense raised, although, ultimately, it may turn out that such efforts were unnecessary. The prerequisite that the plaintiff "must ... disprove every affirmative defense asserted against it" may be a harbinger of greater delay and expense.

The plaintiff should be *obligated* to disprove an affirmative defense in moving for summary judgment when, but only when, the defense produces material in support of an affirmative defense.

---

showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

**3.** An affirmative defense is one that "will defeat [the] plaintiff's claim if it is accepted by the court" and it "serves the purpose of giving the opposing party notice of the defense and an opportunity to argue why his [or her] claim should not be barred completely." 5 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1270, at 414 (2d ed. 1990). Affirmative defenses must be pleaded under HRCP Rule 8(c) and the failure to do so may result in their waiver. *Touche Ross Ltd. v. Filipek*, 7 Haw.App. 473, 487, 778 P.2d 721, 730 (1989). Generally, the defendant has the burden of proof on all affirmative defenses, which includes the burden of proving facts which are essential to the asserted defense. *Carvalho v. Raybestos–Manhattan, Inc.*, 794 F.2d 454, 456 (9th Cir.1986), *aff'd*, 871 F.2d 891 (9th Cir.1988); *Waterhouse Trust Co. v. Freitas*, 33 Haw. 139, 148 (1933) (burden of proof remains with the party which raised the defense to avoid liability); *Rosa v. Johnston*, 3 Haw.App. 420, 423, 651 P.2d 1228, 1232 (1982) (accord and satisfaction an affirmative defense and party which raised it has the burden to prove such defense). Failure to raise an affirmative defense on the pleadings is immaterial if evidence of the defense is introduced and not objected to for failure to plead it, and no surprise is claimed. *Godoy v. County of Hawaii*, 44 Haw. 312, 322, 354 P.2d 78, 83 (1960).