GORDON & ASSOCIATES, INC., and Gordon M. Swoboda, Appellants,

v.

CULLEN BANK/CITYWEST, N.A., Appellee.

No. 13–92–469–CV.

Court of Appeals of Texas, Corpus Christi.

May 12, 1994.

Rehearing Overruled July 14, 1994.

---

Michele Baldwin, Houston, for appellants.

Terry D. Key, Michael E. Hearn, Jones, Galligan & Key, Weslaco, for appellee.

Before SEERDEN, C.J., and GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

SEERDEN, Chief Justice.

This is an appeal from a second summary judgment granted in favor of Cullen Bank/Citywest, N.A. ("the bank") on a suit to enforce two promissory notes. A prior summary judgment was reversed by this court for failure of the proofs to establish the commercial reasonableness of the bank's sale of the collateral that secured the notes. *Gordon & Assocs., Inc. v. Cullen Bank,* 805 S.W.2d 490, 493 (Tex.App.—Corpus Christi 1990, no writ). This court recognized that the bank "established its right to recover on the notes by proper summary judgment evidence," but the cause was remanded on the issue of commercial reasonableness. *Id.* On remand, the bank amended its summary judgment motion, offered evidence related to commercial reasonableness, and secured a summary judgment that it recover $458,-503.52 for principal and interest as of February 5, 1992, per diem interest of $74.81 from February 5, 1992, until judgment (June 9, 1992), $15,000.00 attorney's fees, and post-judgment interest of 10% per annum. Ap-

pellants raise six points of error. We again reverse and remand.

## FACTUAL BACKGROUND

The two promissory notes executed by Gordon & Associates, Inc. (Gordon), in the original amounts of $245,000.00 and $100,672.81, were secured by any and all equipment, inventory, accounts, contract rights, chattel paper, instruments, documents, and general intangibles "now owned or hereafter acquired" by Gordon. The bank duly perfected its security interest in the listed property. In addition, the notes were personally guaranteed by Gordon Swoboda (Swoboda).

The bank originally sought judgment against both appellants for the sums due on the notes, without resort to the collateral. However, during pendency of the suit, the bank seized and sold, at public sale, one piece of appellants' equipment, a 1961 Linkbelt LS–78 Dragline. Then pursuant to a writ of sequestration and a judicial order permitting pre-judgment sale, the bank took possession of, and sold at private sale, a 1978 John Deere Loader and a 1978 Hein Warner Backhoe.

The bank continued to maintain its suit against appellants. However, the bank was no longer suing merely to enforce the notes, but was seeking to recover for the deficiency caused by the failure of the net proceeds of the equipment sales to fully satisfy appellants' indebtedness. No dispute exists over the validity and subsequent default status of the underlying notes. The only issue here is the reasonableness of the bank's actions related to the sale of the collateral. Included are sub-issues concerned with the bank's pleadings and whether the bank complied with the applicable provisions of the Texas Business and Commerce Code with respect to notice, aspects of the sales, application of the proceeds, and election of remedies.

## STANDARD OF PROOF

In reviewing a summary judgment, the movant has the burden to show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Evidence favorable to the non-movant will be taken as true, and every reasonable inference must be indulged in his favor. *Id.*

## THE SUMMARY JUDGMENT EVIDENCE

While the appellants responded to the bank's motion with allegations of noncompliance with the statute, their affidavit was struck as "conclusory" by the trial court.[1] This absence of controverting evidence, however, does not diminish the burden placed on the bank to proffer legally sufficient evidence of its entitlement to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677–79 (Tex.1979).

The evidence offered by the bank consisted of various documents and the affidavit of Pete Mitchell, a senior vice-president for the bank. In addition to the instruments evidencing the underlying debt, the bank offered:

1) a notice of default on note # 1 to Gordon dated 11/7/88 (no notice to Swoboda; no receipt for delivery);

2) a notice of intent to accelerate note # 2 to Gordon dated 11/7/88 (no notice to Swoboda; no receipt for delivery);

3) Writ of Sequestration dated 4/5/89 (exhibits 1–8 listing property to be sequestered not attached; certificate of service on appellants is blank);

4) notice dated 7/6/89 of seizure of the Linkbelt dragline and intent to sell *at private sale* (copies to both appellants with receipts for delivery);

5) newspaper notices published in Houston Chronicle and Houston Post the week of 7/16/89 advertising *public sale* of the dragline (of the fourteen line "legal notice," the only information on the collateral was one line: "one (1) 1961 Linkbelt LS–78 Dragline Serial No. 7D517");

---

1. We render no opinion on appellants' claim that the affidavit was erroneously struck. We will initially assume that no error occurred.

6) judicial Order for Sale of Property dated 8/29/89 (no list of property; merely references Writ of Sequestration);

7) six bids received by bank for dragline (highest bid—$7525.00);

8) notices dated 9/20/89 to both appellants (with receipts for delivery) that dragline was sold on 8/29/89 (sold for "$7500.00"[2] with incurred expenses of $11,190.51 for a *net loss* of $3,690.51; *appellants given "full credit for this net loss."*);

9) notice of intent to sell the backhoe and loader at private sale (filed with trial court 11/27/89);

10) notice of intent to sell at private sale sent to Swoboda dated 11/22/89 (receipt shows delivery 12/7/89; no notice to Gordon);

11) publishers' affidavits detailing the advertising of the backhoe and loader with dates run and cost of each ad (ad expenses were $1,103.41 of $3,372.47 total expenses);

12) summary of income and expenses related to sale of backhoe and loader (filed on *3/17/92, almost 27 months after the sale,* as an exhibit to the bank's amended motion for summary judgment); and

13) the affidavit testimony of Pete Mitchell that the bank received no bids on the loader or backhoe, therefore it purchased the equipment itself at *private sale* on 12/22/89, paying $100.00 for the backhoe and $15,000.00 for the loader.

## COMMERCIAL REASONABLENESS

■ Appellants' first three points of error assert that the summary judgment was erroneous due to the existence of material fact questions concerning commercial reasonableness and notice. As an essential element of its action for deficiency, the bank was required to plead and prove that all aspects of its disposition of the collateral were commercially reasonable as delineated in Texas Business and Commerce Code, sections 9.504, 9.505 and 9.507. *See Greathouse v. Charter Nat'l Bank–Southwest,* 851 S.W.2d 173, 176 (Tex.1992); *Tanenbaum v. Economics Lab., Inc.,* 628 S.W.2d 769, 771 (Tex.1982); *Daniell*

*v. Citizens Bank,* 754 S.W.2d 407, 410 (Tex. App.—Corpus Christi 1988, no writ).

The code allows the secured party to dispose of collateral after default.

(c) Disposition of the collateral may be by public or private proceedings ... but *every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable *notification* of the time after which any private sale or other intended disposition is to be made *shall* be sent by the secured party to the debtor....

TEX.BUS. & COM.CODE ANN. § 9.504(c) (Tex. UCC) (Vernon 1991) (emphasis added). "The only limits on the creditor's disposition of the collateral is that it must be commercially reasonable, and must be made only after notification to the debtor if required by Section 9.504." *Tanenbaum,* 628 S.W.2d at 771. The bank has offered no evidence that the collateral falls into a category not requiring notice; therefore, it was incumbent upon the bank to establish commercial reasonableness and notice as a matter of law in order to recover on its summary judgment. *See Id.; Daniell,* 754 S.W.2d at 410. The bank has failed to sustain this burden.

### Deemed Reasonable under 9.507(b)

■ Whether collateral has been disposed of in a commercially reasonable manner is generally a question of fact. *Daniell,* 754 S.W.2d at 410 (citing *Achimon v. J.I. Case Credit Corp.,* 715 S.W.2d 73, 76 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) and *Food City, Inc. v. Fleming Co.,* 590 S.W.2d 754, 759 (Tex.Civ.App.—San Antonio 1979, no writ)). However, the code lists some nonexclusive instances where a disposition is presumptively commercially reasonable.

If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices

---

**2.** We note a $25 discrepancy between the amount credited to appellants and the amount

reported in both the bid offer and in the Mitchell affidavit.

among dealers in the type of property sold he has sold in a commercially reasonable manner.... A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable....

TEX.BUS. & COM.CODE ANN. § 9.507(b) (Tex. UCC) (Vernon 1991). The bank has failed to offer any evidence of a recognized market, usual manner of sale in such market, current prices in such market at the time it conducted the sales, or the reasonable commercial practices among dealers for the equipment sold in this case. Neither has the bank offered any evidence of creditor or judicial approval prior to disposition.[3] The dispositions may not, therefore, be conclusively deemed commercially reasonable under section 9.507(b).

## Notice and Aspects

■ Unable to deem the dispositions reasonable, we review the proffered evidence in light of the statutory mandates to determine if the bank has established, as a matter of law, that the dispositions were in compliance. The bank offered evidence that it had notified appellants of a *private sale* of the dragline, run a "legal notice" four times in one week in two Houston papers, and then sold the dragline at a *public sale* to the highest bidder at a net loss of $3,690.51. The bank offered no evidence of either an appraised or fair market value of the dragline, nor any evidence of its condition. Neither did the bank account in any manner for the $11,190.51 in "expenses" incurred in a sale that grossed only $7,525.00, except to timely notify appellants of the increase in the amount of their indebtedness due to the net loss realized by the sale of the collateral by the bank.

In disposing of the backhoe and loader, the evidence shows a notification of intent to sell sent in 1989 to Swoboda only, some advertising of the equipment in Corpus Christi and the Rio Grande valley, the statement of Mitchell *made in 1992* that the bank purchased the two items itself at the private sale in 1989 after failing to receive any bids, and an accounting of the income and expenses of the sale which credits appellants with the net gain realized on the sale. The accounting was filed with the court twenty-seven months after sale. There is no indication of appraised value, fair market value, or even the value placed on the equipment by willing bidders at a distress sale. There is no evidence that appellants were notified as to the application of the proceeds to the amount of their debt until the second summary judgment motion was filed with the court.

From the evidence offered, it is impossible to determine that the required notice was given and impossible to determine that the method, manner, time, place and terms[4] of the dispositions were commercially reasonable. Evidence which only establishes that the collateral was advertised to some extent, and then sold to the highest bidder is insufficient to establish, as a matter of law, that the requirements of 9.504 were fulfilled. *See Daniell*, 754 S.W.2d at 410; *ITT Commercial Fin. Corp. v. Riehn*, 796 S.W.2d 248, 250–51 (Tex.App.—Dallas 1990, no writ); *Boles v. Texas Nat'l Bank of Waco*, 750 S.W.2d 879, 880–81 (Tex.App.—Dallas 1988, no writ).

## Expenses

■ Additionally, the evidence fails to establish that the expenses incurred in the sales were reasonable. The code provides:

(a) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any *commercially reasonable* preparation or processing. Any sale of goods is subject to the chapter on Sales (Chapter 2). The proceeds of disposition *shall* be applied in the order following to

(1) the *reasonable* expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like....

---

**3.** Even if we assume that the judicial approval to sell property covered the loader and backhoe, the aspects of disposition were not judicially pre-approved. See *Gordon & Assoc.*, 805 S.W.2d at 493.

**4.** For example, from this record it is impossible to determine whether the backhoe that the bank purchased from itself for $100.00 had a reasonable value of $1.00 or $100,000.00.

TEX.BUS. & COM.CODE ANN. § 9.504 (Tex. UCC) (Vernon 1991) (emphasis added). This provision has been construed to require not only that the expenditures were necessary, but also that the amount charged was reasonable under the circumstances. *See Hall v. Crocker Equipment Leasing, Inc.*, 737 S.W.2d 1, 4 (Tex.App.—Houston [14th Dist.] 1987, writ denied); *Davis v. Small Business Inv. Co. of Houston*, 535 S.W.2d 740, 745 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.). The expenses incurred to sell the dragline are neither itemized nor accounted for in any manner. The expenses incurred in the sale of the loader and backhoe are merely categorized in the summary. There is no evidence of necessity or reasonableness for any of the expenses.

### Accounting to Debtor

 The evidence also fails to establish that the bank made the required accounting to appellants for the proceeds of the sale of the backhoe and loader. *See* TEX.BUS. & COM.CODE ANN. § 9.504(b) (Tex. UCC) (Vernon 1991); *Tackett v. Mid–Continent Refrigerator Co.*, 579 S.W.2d 545, 548 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.); *Kolbo v. Blair*, 379 S.W.2d 125 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.). While the bank promptly notified appellants of the extension of their debt due to the net loss realized in the sale of the dragline, the record before us indicates that appellants went without an accounting of the sale of the backhoe and loader from December of 1989 until March 1992. In 1992, notice came only by way of judicial process.

### Purchase by Secured Party

The bank has also failed to offer any evidence entitling it to buy the loader and backhoe at the *private sale* it conducted. The code provides that a secured party "may buy at any *public sale*." TEX.BUS. & COM. CODE ANN. § 9.504(c) (Tex. UCC) (Vernon 1991) (emphasis added). However, for the secured party to buy at a *private sale*, the collateral must be "of a type customarily sold

in a recognized market or is of a type which is the subject of widely distributed standard price quotations." *Id.* There was no evidence offered relating to price quotations or recognized markets for the type of collateral sold in this case.

### Election to Retain in Satisfaction

The evidence of self-purchase of the backhoe and loader by the bank, with subsequent failure to timely notify the debtor, also raises a material fact issue implicating code section 9.505. Under this provision, a secured party may elect to retain the collateral in full satisfaction of the debtor's obligation. TEX.BUS. & COM.CODE ANN. § 9.505(b) (Tex. UCC) (Vernon 1991). This election, which may be triggered by the actions of the secured party, effectively bars any subsequent action for deficiency. *See Tanenbaum*, 628 S.W.2d at 772.

### DISPOSITION

The bank has failed to offer evidence to establish that it has, as a matter of law, complied with the requirements of Texas Business and Commerce Code, sections 9.504, 9.505 and 9.507. Having failed in its burden of proving compliance with the code, we hold that the bank is not entitled to summary judgment on its deficiency action against appellants. *Nixon*, 690 S.W.2d at 548–49. We sustain appellants' first three points of error.

Because they are unnecessary to the disposition of this case, we decline to address appellants' remaining points of error which deal with failure to plead commercial reasonableness,[5] striking of appellants' affidavit, and alleged failure of the bank to state specific grounds in the motion. TEX.R.APP.P. 90(a).

We REVERSE the judgment and REMAND the cause to the trial court for further proceedings.

---

5. While some confusion may have existed in the past, we note that since the date the summary judgment was granted in this case, the Texas Supreme Court has made it abundantly clear that a creditor must *plead* and prove that any disposition of collateral was commercially reasonable. *Greathouse*, 851 S.W.2d at 176–77.