# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00131-CV

**Morgan Stanley Dean Witter Credit Corporation, Appellant**

**v.**

**Vernon Griffin, Appellee**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT
## NO. C98-566C, HONORABLE ROBERT PFEUFFER, JUDGE PRESIDING

Appellant Morgan Stanley Dean Witter Credit Corporation ("Morgan Stanley") appeals from the district court's take-nothing judgment in its suit to collect a deficiency arising from the foreclosure and sale of collateral that secured an installment sales contract under which Vernon Griffin ("Griffin") defaulted. Morgan Stanley challenges the legal and factual sufficiency of the evidence to support the court's judgment. We will affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1989, Griffin and his former wife purchased a motor home[1] by executing a retail installment contract ("the note") pledging the motor home as collateral.[2] The motor home cost $155,413.20, of which the Griffins financed $61,820 over fifteen years. The parties dispute ownership of the note. Morgan Stanley contends the note was originally held by Sears Consumer

---

[1] We also use the term "RV" (recreational vehicle) to refer to a motor home in this opinion.

[2] The Griffins divorced in 1991.

Financial Corporation of Delaware, subsequently NOVUS Financial Corporation, and ultimately held by Morgan Stanley Dean Witter Credit Corporation. Griffin counters that no evidence establishes that Morgan Stanley ultimately held the note.

In September 1997, payments on the motor home stopped. Morgan Stanley was unable to locate the former Mrs. Griffin but did contact Griffin as co-maker of the note. According to Morgan Stanley, during October through December 1997, Griffin and Morgan Stanley discussed options for discharging the note. Morgan Stanley agreed to Griffin's attempting to sell the motor home but also made plans to repossess the motor home on January 16, 1998, if it had not received payment by then. Griffin maintains that he made a verbal offer to Morgan Stanley to purchase the motor home for $25,000, and also faxed an offer of $28,000 on January 7, 1998. Griffin maintains he based his offers on an RV dealer's statement that it might be able to give Griffin a comparable amount, depending on the motor home's condition. Morgan Stanley denies receiving Griffin's faxed offer. Morgan Stanley repossessed the motor home on January 28 and had it towed to Adesa-San Antonio ("Adesa"), a wholesale, motor vehicle auction house located in San Antonio.[3] On February 2, Morgan Stanley sent Griffin and his former wife a notice of acceleration of the outstanding debt of $46,039.95 and notice of intent to sell the motor home at a "private sale" to be held "on or after February 16, 1998."

Adesa sold the Griffin motor home at what it claims was a private dealer-only auction on February 26, 1998, for $18,250. Griffin contends that the auction was a public sale. Following

---

[3] The general manager of Adesa-San Antonio ("Adesa") testified that Adesa is part of Adesa Corporation, a national chain of wholesale motor vehicle auction houses that operates in fifty-seven U.S. cities. He testified that eighty percent of the vehicles sold at Adesa auctions are passenger vehicles, with the remainder being large trucks, boats, motorcycles and RVs.

the auction, Morgan Stanley sent a formal demand to Griffin and his former wife for $27,880.88, the alleged deficiency balance remaining on the note. Griffin challenged his obligation to pay the deficiency. In July 1998, Morgan Stanley brought suit to collect that amount from Griffin. Morgan Stanley non-suited the former Mrs. Griffin.

In a bench trial, the district court rendered a take-nothing judgment against Morgan Stanley. At Morgan Stanley's request, the district court filed findings of fact and conclusions of law. In four issues raised on appeal, Morgan Stanley challenges the court's findings of fact and related conclusions of law that: (1) Morgan Stanley failed to establish that it was the holder of the Griffin note; (2) the Adesa auction was a public, not private, sale for which Morgan Stanley did not provide the Griffins with adequate notice as required by section 9.504 of the Texas Business and Commerce Code;[4] (3) the motor home was not sold in a commercially reasonable manner as required by section 9.504; and (4) the sales price obtained for the motor home was not commercially reasonable.

---

[4] The relevant portions of section 9.504(c) provide:

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be *commercially reasonable*. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent.

Tex. Bus. & Com. Code Ann. § 9.504(c) (West 1991) (emphasis added).

After suit was filed, the Legislature amended the code. *See* Act of May 17 1999, 76th R.S., ch. 414, § 1.01, 1999 Tex. Gen. Laws 2639, 2639-750. We cite to the version of the law that was in effect at the time this action accrued.

Morgan Stanley requests a reversal of the district court's judgment, judgment in its favor, and a remand for trial on the amount of attorney's fees. In the alternative, Morgan Stanley requests a remand of the entire case. We conclude that there is some evidence to support the trial court's findings that the sale of the motor home was not commercially reasonable and that the findings are not so against the great weight and preponderance of the evidence as to be clearly and manifestly unjust. Because the issue regarding the commercial reasonableness of the sale is dispositive of Morgan Stanley's claim, we do not reach the issues of ownership of the note or the adequacy of notice.

**STANDARD OF REVIEW**

We attach to findings of fact the same weight that we attach to a jury's verdict on jury questions. *Lawyers Sur. Corp. v. Larson*, 869 S.W.2d 649, 653 (Tex. App.—Austin 1994, writ denied). Findings of fact are reviewed for legal and factual sufficiency of the evidence by the same standards used to review jury findings. *Stable Energy v. Newberry*, 999 S.W.2d 538, 546 (Tex. App.—Austin 1999, pet. denied). The review for legal and factual sufficiency varies depending on whether the party appealing the finding had the burden of proof on the issue at trial. *See* W. Wendell Hall, *Standards of Review in Texas*, 29 St. Mary's L. J. 351, 476-502 (1998). When the party having the burden of proof appeals an adverse fact finding in the trial court, the point of error should be that the position taken by the appellant was established as a matter of law or that the findings contradicting that position were against the great weight and preponderance of the evidence. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Here Morgan Stanley had the burden at trial

4

to prove that disposition of the collateral was commercially reasonable. *Greathouse v. Charter Nat'l Bank-Southwest*, 851 S.W.2d 173, 176-77(Tex. 1992).

A party challenging an adverse fact finding as a matter of law – a legal sufficiency point – must overcome two hurdles. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). First, the record must be examined for evidence that supports the trial court's finding, while ignoring all evidence to the contrary. *Id.* If there is no evidence to support the finding, then the entire record must be examined to determine whether the contrary proposition asserted by the appellant is established as a matter of law. *Id.* Thus, for Morgan Stanley to prevail on its legal sufficiency point, we must find that there is no evidence in the record to support the challenged findings and that the contrary position is established as a matter of law. *Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ).

In reviewing whether a finding is against the great weight and preponderance of the evidence – a factual sufficiency point – we must examine all the evidence. *Stable*, 999 S.W.2d at 546. Even though a finding may appear to be against the preponderance of the evidence, it will be upheld unless the evidence is too weak to support the finding or the weight of the evidence to the contrary is so overwhelming as to render the judgment manifestly wrong and unjust. *See id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)); *Valencia v. Garza*, 765 S.W.2d 893, 896 (Tex. App.—San Antonio 1989, no writ). Moreover, the trial court as the trier of fact in a bench trial is the exclusive judge of the facts proved, the credibility of the witnesses, and the weight to be given their testimony. *Stable*, 999 S.W.2d at 556-57; *Valencia*, 765 S.W.2d at 895. The appellate court should not

substitute its judgment for that of the trier of fact merely because it reaches a different fact conclusion. *Westech*, 835 S.W.2d at 196.

An appellate court is not bound by a trial court's legal conclusions. *Stable*, 999 S.W.2d at 547. The appellate court reviews the conclusions independently to determine their correctness. *Ashcraft* v. *Lookadoo*, 952 S.W.2d 907, 910 (Tex. App.—Dallas 1997), *pet. denied*, 977 S.W.2d 562 (Tex. 1998) (per curiam). If the controlling findings of fact will support a correct legal theory, then incorrect conclusions of law do not require reversal. *Stable*, 999 S.W.2d at 547; *Valencia*, 765 S.W.2d at 897-98. Conclusions of law may not be reversed unless they are erroneous as a matter of law. *Stable*, 999 S.W.2d at 547.

In short, Morgan Stanley has a significant burden on appeal. We must uphold the judgment of the trial court unless we conclude that there is no evidence to support the trial court's findings and that the appellant's position is established as a matter of law or that the findings are so contrary to the great weight and preponderance of the evidence as to be manifestly unjust,

**DISCUSSION**

Morgan Stanley asserts in issues three and four that it disposed of the motor home in a commercially reasonable manner and at a commercially reasonable price. Because price is one of several factors courts consider in determining whether disposition was commercially reasonable, we will address these issues together. *See Havins v. First Nat'l Bank*, 919 S.W.2d 177, 181 (Tex. App.—Amarillo 1996, no writ).

Section 9.504(a) of the Texas Business and Commerce Code ("the Code") provides that "[a] secured party after default may sell, lease or otherwise dispose of any or all of the collateral

6

in its then condition or following any commercially reasonable preparation or processing." Tex. Bus. & Com. Code Ann. § 9.504(a) (West 1991). When a creditor chooses to sell the collateral, "every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." *Id.* § 9.504(c). The creditor has the burden of showing the commercial reasonableness of the sale. *Greathouse*, 851 S.W.2d at 176-77. Whether the creditor has disposed of collateral in a commercially reasonable manner is a question of fact. *Havins*, 919 S.W.2d at 181; *Gordon & Assocs., Inc. v. Cullen Bank/Citywest, N.A.*, 880 S.W.2d 93, 96 (Tex. App.—Corpus Christi 1994, no writ). The Code does not define "commercially reasonable"; it does, however, specify that as long as the secured party has sold "in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner." Tex. Bus. & Comm. Code Ann. § 9.507(b) (West 1991).[5] In addition, the failure to obtain the best price does not automatically render the sale commercially unreasonable; it is simply one of several factors that may be considered. *See id*.; *Havins*, 919 S.W.2d at 181 n.3.

Texas courts examining commercial reasonableness have considered many factors, including whether the secured party pursued the best possible price, whether the collateral was sold

---

[5] The relevant portions of section 9.507(b) provide:

> The fact that a better price could have been obtained by a sale at different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner.

Tex. Bus. & Com. Code Ann. § 9.507(b) (West 1991).

in bulk or piecemeal, whether it was sold in a public or private sale, whether it was available for inspection before and during the sale, whether it was sold in a depressed or thriving market, and whether the expenses of the sale were reasonable. *Havins*, 919 S.W.2d at 181; *Pruske v. Nat'l Bank of Commerce*, 533 S.W.2d 931, 937 n.1 (Tex. Civ. App.—San Antonio 1976, no writ). In *Havins*, the court further recommended examining the advertising undertaken, the state of the collateral at the time of sale, efforts to enhance that condition, the method of soliciting bids, the number of bids, received, the place of sale, and the creditor's good faith in conducting the sale. *See Havins*, 919 S.W.2d at 181. The court may also examine evidence regarding usual commercial practices among dealers for the collateral sold. *See* Tex. Bus. & Com. Code Ann. § 9.507(b); *Gordon*, 880 S.W.2d at 97. If the disposition of the collateral is not commercially reasonable, the secured party may not recover a deficiency payment from the debtor. *See Greathouse*, 851 S.W.2d at 176-77; *Rabinowitz v. The Cadle Co. II*, 993 S.W.2d 796, 800 (Tex. App.—Dallas 1999, pet. denied); *ITT Commercial Fin. Corp. v. Riehn*, 796 S.W.2d 248, 252 (Tex. App.—Dallas 1990, no writ).

Morgan Stanley objects to twenty-eight findings of fact related to the commercial reasonableness of the sale of the Griffin motor home.[6] In addition, Morgan Stanley objects to the district court's related conclusion of law that it did not sell the motor home in a commercially reasonable manner and thus is barred from collecting a deficiency judgment. We have grouped the court's findings generally as to subject matter and review them below. In reviewing the evidence, we

---

[6] Morgan Stanley also challenges findings of fact nos. 38 and 39, which address the type of notice required by statute. Because we find the issue of commercial reasonableness is dispositive, we do not reach the issue of notice.

are mindful of the significant burden Morgan Stanley must overcome to overturn the court's judgment given the applicable standard of review.

### *Recognized Market for RVs*

Morgan Stanley challenges the district court's findings of fact that the Adesa auction is not a recognized market for reselling RVs.[7] Adesa's general manager Sam D'Amato testified that Adesa offers about 1500 motor vehicles and sells approximately 700 to 800 vehicles at its weekly auctions.[8] Eighty percent of the vehicles sold are passenger vehicles. D'Amato testified that Adesa is known as the place to go if you are a car dealer looking for cars. In comparison, less than one percent of the vehicles sold at Adesa are RVs; D'Amato could recall the name of only one or two RV dealers from Adesa's base of approximately 1500 vehicle dealers; and D'Amato testified that the Griffin motor home may have been the only RV offered for sale on February 26. D'Amato testified to his belief that car dealers are also interested in RVs, based on his observation that most car dealers "have one or two RVs on their lot at any given time." Significantly, D'Amato testified that Adesa runs a special auction for RVs called "The Texas Round-Up" but admitted that Morgan Stanley *did not* attempt to place the motor home in this sale or any other RV-specific sale. We find that there is some evidence to support the district court's findings that Adesa sells primarily passenger vehicles

---

[7] Finding of fact no. 16: "The ADESA auction is an auction that sells passenger vehicles almost exclusively." Finding of fact no. 18: "The fact that 700-900 dealers are interested in ADESA auctions in general does not establish anything with regard to the commercial reasonableness of selling a recreational vehicle at an ADESA auction absent proof that ADESA is known as [a] seller of recreational vehicles." Finding of fact no. 19: "ADESA is not known as a seller of recreational vehicles and is thus not a recognized market for these vehicles." Finding of fact no. 37: "Plaintiff failed to establish whether the collateral was sold at a propitious time."

[8] D'Amato was tendered as an expert witness at trial.

and does not represent a recognized market for resale RVs. In addition, the findings are not so against the great weight and preponderance of the evidence as to be manifestly unjust.

### *Selling Efforts*

Morgan Stanley also objects to finding of fact no. 20: "Sam D'Amato knew nothing of the particular auction in question as he had no personal knowledge thereof." D'Amato testified extensively regarding Adesa's usual business practices. He admitted, however, that he had no personal knowledge of the details of the processing and sale of the Griffin motor home.[9] Morgan Stanley relied on D'Amato's testimony of Adesa's usual practices to prove that prospective buyers were able to inspect Griffin's motor home during the three days before the auction. Also, while there was evidence that Morgan Stanley requested the motor home be detailed for the auction, there was some question whether the detailing was actually done because the expense records did not clearly reflect a charge for detailing. D'Amato testified that detailing can bring between $500 to $1500 more for a vehicle. In addition, D'Amato was unable to clearly explain the expense records for the repossession, transportation, and preparation of the motor home, making it difficult to support the reasonableness of the expenses claimed in connection with the sale. We conclude the evidence was legally and factually sufficient to support the finding that D'Amato had no personal knowledge of this auction.

---

[9] *See ITT Commercial Fin. Corp. v. Riehn*, 796 S.W.2d 248, 251 (Tex. App.—Dallas 1990, no writ) (stating that expert unfamiliar with specific mobile homes sold and procedures used to sell them could provide testimony only on whether reasonable price was obtained, not commercial reasonableness of disposition).

*Advertising*

Additionally, Morgan Stanley challenges the court's finding of fact no. 21: "[Morgan Stanley] did not establish that ADESA advertised the sale of the particular recreational vehicle in question." D'Amato testified that Adesa's marketing department usually faxed the list of vehicles for sale, sent flyers, mailed notices, and telemarketed to dealers. However, Morgan Stanley was unable to show that the Griffin motor home was the subject of any of these efforts. D'Amato stated he could be "almost 99 percent assured" these things were done for the Griffin motor home, but no copies of the faxed inventory, flyers, or mailed notices were produced at trial. We conclude the evidence was legally and factually sufficient on this finding.[10]

*Reasonable Commercial Practices of RV Dealers*

The district court also made finding of fact no. 35, which Morgan Stanley challenges, that "[Morgan Stanley] failed to establish the commercially reasonable practices among dealers of recreational vehicles to sell those vehicles." Morgan Stanley's witnesses at trial included D'Amato, Debra Schulze, a collections manager at Morgan Stanley, and Pam Wilkes, a client service officer at Morgan Stanley. D'Amato's only testimony about RV dealers' selling efforts was that one of the biggest RV dealers he works with was having difficulty selling RVs. He did not discuss what sales methods the dealer was using. Schulze was tendered as an expert regarding reasonable and necessary sales practices in the foreclosure industry. By her own admission, she does not interact with dealers. Wilkes was a regional collections specialist on RV accounts at the time of the events leading to this

_____

[10] The court's finding of fact no. 21 overlaps with challenged finding of fact no. 22: "Plaintiff did not advertise the sale of the recreational vehicle collateral in question." Because we find evidence to support finding of fact no. 21, we conclude that finding no. 22 is similarly supported.

11

lawsuit. She was the principal person assigned to collect the Griffin account and spoke often with Griffin, but her job as she described it did not include working with RV dealers. We conclude there was legally and factually sufficient evidence to support the court's findings that Morgan Stanley failed to establish reasonable sales practices of RV dealers.

*Other Efforts to Sell Motor Home*

Morgan Stanley also challenges the court's findings that it made no efforts to dispose of Griffin's motor home in a manner other than the Adesa auction.[11] Schulze testified that Morgan Stanley does not consign its collateral vehicles, nor does it invite dealers to view the collateral and make offers. She also testified that Morgan Stanley instructed the repossession agent to tow the collateral directly to Adesa for liquidation by auction. In addition, Griffin testified that he had spoken with an RV dealer by telephone who had quoted him $25,000 depending on the vehicle's condition and that he had faxed a letter containing a $28,000 purchase offer to Morgan Stanley. Morgan Stanley's witnesses denied receiving the fax. Griffin produced a copy of the letter at trial but was unable to confirm that the fax was sent. With regard to the RV dealer, Wilkes acknowledged that she had spoken with Griffin about his conversation with the dealer, but distinguished the price quoted Griffin as simply a ballpark figure the dealer might pay if the RV was in the condition described as opposed to an actual offer. Wilkes's notes on the Griffin account indicated that Morgan Stanley's management was agreeable to Griffin selling the RV to reduce the repossession loss; however, Wilkes

---

[11] Finding of fact no. 23: "Plaintiff did not attempt to obtain any bids from dealers or others with respect to the collateral in question." Finding of fact no. 24: "Plaintiff did not otherwise engage in solicitation or negotiations conducted either directly or through a broker with respect to attempting to sell the collateral."

could not say whether management was informed of the $25,000 figure that was quoted Griffin. We conclude that adequate evidence supports the court's finding that Morgan Stanley did not attempt to sell the collateral other than through the auction.

*Sales Price of Motor Home*

Finally, Morgan Stanley challenges the court's findings that the sales price of the motor home was unreasonable.[12] Morgan Stanley's own documentation introduced at trial listed the N.A.D.A.[13] retail value of the motor home at $33,110; wholesale value was listed at $24,210. However, Morgan Stanley required a minimum auction bid ("floor price") of only $17,500, which is twenty-eight percent under the N.A.D.A. wholesale value and fifty-three percent under retail. While Schulze testified that the floor price was based on the RV's condition, age, and the firm's previous experience selling RVs, Morgan Stanley does not dispute the district court's findings that the motor

---

[12] Finding of fact no. 7: "The wholesale value of the collateral was $24,210.00 at the time of the sale of the collateral." Finding of fact no. 8: "The fair market retail value of the collateral was $33,110.00 at the time of the sale of collateral." Finding of fact no. 11: "Defendant put a 'floor' price of $17,500.00 on the collateral at the auction, said price is found to be unreasonably low given the admitted fair market value of the collateral." Finding of fact no. 30: "Plaintiff did not sell the collateral in a commercially reasonable line, in that the collateral was sold in the first and only auction it was entered in with an unreasonably low floor price." Finding of fact no. 32: "The sales price is commercially unreasonable in light of the market value, the wholesale value, and the amount offered by Defendant." Finding of fact no. 33: "The collateral was not sold at a price current in the market at the time of the sale." Finding of fact no. 36: "Plaintiff failed to establish how it can be commercially reasonable to sell a recreational vehicle in a particular auction that it knows, based on past experience, will yield a sales price significantly lower than even N.A.D.A. wholesale values."

[13] "N.A.D.A." is not defined in the briefs or in the record. We assume the parties are referring to the National Automobile Dealer's Association's Official Used Car Guide.

13

home was in good condition and had low mileage.[14] In addition, the motor home was never appraised for value. It was sold at the first and only auction in which it was entered. There is no additional cost to offer the vehicle in a subsequent auction. D'Amato testified that auctions are "a good way to liquify assets immediately."[15]

Some of the evidence on price favored Morgan Stanley. D'Amato testified that sometimes the price obtained for a vehicle will decline the more auctions in which it is offered and that the repossession lane at auction is one of the most popular lanes. Schulze testified that selling repossessed collateral at retail value is not economically feasible for a corporation like Morgan Stanley in most cases because of the time and expense involved. She also testified that if she were selling her own RV she would have options, besides sale by auction, not available to a corporation. With regards to this portion of Schulze's testimony, we agree with Morgan Stanley that the court's finding of fact no. 26 is inaccurate,[16] but conclude that the error was not harmful because other

---

[14] The motor home had 15,324 miles on the odometer, which both sides agreed is low. The impound checklist indicated that twenty-six components of the motor home were in good condition, while nine were in need of refurbishing. The Adesa condition summary lists seven components in good condition, twenty-six components in fair condition, and five in poor condition. Griffin testified that his former wife was a meticulous housewife, who put covers over the motor home's furniture and plastic over the carpet.

[15] We note that comment one to section 9.504 states: "Although public sale is recognized, it is hoped that private sale will be encouraged where, as is frequently the case, private sale through commercial channels will result in higher realization of collateral for the benefit of all parties." Tex. Bus. & Com. Code Ann. § 9.504 cmt. 1. Arranging for a private sale may take more time than arranging for liquidation by auction, but may result in a better price.

[16] Finding of fact no. 26: "Plaintiff's own employee, Debra Schultze [sic], admitted that she would not sell her personal recreational vehicle in an auction such as the ADESA auction utilized by Plaintiff in this case, because it would not bring enough money. Debra Schultze [sic] would try methods other than by auction to get a better price if she was selling her personal recreation [sic] vehicle."

testimony by Schulze supports the court's overall findings that the sales price of the motor home was unreasonable in light of the fact that Morgan Stanley often does not obtain wholesale value for vehicles sold at auction.[17] The important testimony was not the manner in which Schulze would sell her own RV, but her statements: "I'm saying my experience has been that my vehicles, run through an auction, do not get wholesale"; ". . . not every vehicle of that year, make and model is going to sell for the wholesale value that's in the book. You will have some that will, many that won't"; and "We sell vehicles across the country and you do not even receive wholesale value at an auto auction."[18] We conclude that there is some evidence to support the court's findings that the sales price of the motor home was unreasonably low and that the evidence was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

Based on our review of the record, we conclude that legally and factually sufficient evidence supports the district court's findings in light of the applicable standards of review. In addition, we find that the court's conclusion of law that Morgan Stanley is barred from collecting a

---

[17] Finding of fact no. 27: "Plaintiff's own employee, Debra Schultze [sic], admitted recreational vehicles sold at an auction such as the ADESA auction utilized by Plaintiff in this case sell for significantly less than even 'N.A.D.A.' wholesale value." Finding of fact no. 28: "In spite of her testimony as set forth in Findings of Fact #26 and #27, Plaintiff did not even attempt to obtain wholesale value, let alone fair market value, for the collateral in question by any other means." Finding of fact no. 34: "Plaintiff did not endeavor to obtain the best price possible. In fact, Plaintiff merely placed the collateral in an auction which it affirmatively knew would bring substantially less than even wholesale value based on past experience."

[18] We agree with Morgan Stanley that the evidence is slight for finding of fact no. 40: "Plaintiff reasonably should have obtained close to $33,110.00 for the collateral." However, we conclude that any error that resulted was harmless in light of the evidence on wholesale value and the overall evidence on the other factors constituting whether the sale was commercially reasonable.

deficiency judgment based on the commercial unreasonableness of the sale was not clearly erroneous.[19]

## CONCLUSION

Because we determine there was sufficient evidence to support the district court's findings that the sale of the Griffin motor home was not commercially reasonable, the judgment of the district court is affirmed.

—

_____

David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed:  March 28, 2002

Do Not Publish

---

[19] Conclusion of law no. 6 states:  "Plaintiff did not sell the collateral in a commercially reasonable manner and thus plaintiff is not entitled to sue for a deficiency.  Morgan Stanley also objects to finding of fact no. 29:  "Plaintiff failed to establish that an ADESA auction is a commercially reasonable method, manner or place to sell a recreational vehicle.  The Court finds in each instance that the ADESA Auction was not a commercially reasonable method, manner or place to sell a recreational vehicle."  This finding of fact overlaps with conclusion of law no. 6 which we have upheld; therefore, we reject the challenge to this finding.