

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**

**FORT WORTH**

## NO. 02-14-00149-CV

PLAINSCAPITAL BANK                                                    APPELLANT

V.

NITIN JANI                                                                      APPELLEE

----------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 2009-30416-211

----------

## MEMORANDUM OPINION[1]

----------

After Franklin Transfer, Inc. (Franklin Transfer) defaulted on a note

payable to Appellant PlainsCapital Bank, PlainsCapital sued Appellee Nitin Jani,[2]

---

[1]*See* Tex. R. App. P. 47.4.

[2]Jani's counsel filed a suggestion of death advising this court that Jani died during the pendency of this appeal. Pursuant to rule 7.1(a), we "will proceed to adjudicate the appeal as if all parties were alive," and our judgment "will have the same force and effect as if rendered when all parties were living." Tex. R. App. P. 7.1(a).

a guarantor of the note, to recover the amount due. After a jury trial, the trial court entered a take-nothing judgment against PlainsCapital, and PlainsCapital appealed. We affirm.

## BACKGROUND

On January 15, 2008, Franklin Transfer[3] executed a promissory note payable to PlainsCapital for a revolving line of credit of up to $500,000. The note was signed by Amanda Franklin as president of Franklin Transfer and Jani as "co-president." The note was secured by Franklin Transfer's accounts receivable. Amanda Franklin and Jani each signed a continuing guaranty personally guaranteeing payment and performance of the note and any other debt incurred by Franklin Transfer, including without limitation, principal, interest, attorney's fees, and collection costs.

The note expressly gave PlainsCapital the right of setoff. According to Chris DeFrancisco, a senior vice president with PlainsCapital who assisted Franklin Transfer in obtaining the loan, the right of setoff meant that PlainsCapital could "[t]ake funds from the operating account to pay down the line [of credit]." Five days prior to executing the note, Franklin Transfer opened a checking account at PlainsCapital. The bank resolution by the corporation granted the signatories on the account—Amanda Franklin and Jani—the power to sign and authorize checks. It also stated that only one of their signatures was required on

---

[3]Franklin Transfer was a freight and logistics brokerage company.

checks. The commercial signature card for the account provided that Amanda Franklin and Jani were authorized signatories on the account and that only one signature was required on transactions related to the checking account.

At trial, Jani testified that shortly after the loan documents were executed, he requested that PlainsCapital require his and Amanda Franklin's signatures on all checks over $5,000 written on the account. Jani further testified that DeFrancisco ordered checks with the legend "Two Signatures required over $5,000" and with two signature lines. DeFrancisco told Jani that he would "have the controls in place."

DeFrancisco testified that Jani requested that two signature lines be placed on the checks as an internal control to make sure that Amanda Franklin was not using funds for personal use. DeFrancisco said he also explained to Jani that the two-signature requirement was an internal control only because the computer software that PlainsCapital used to clear checks could not confirm that both signatures were on the checks and because no human being looked at the checks when they cleared. DeFrancisco claimed that Jani understood that the two-signature requirement was an internal control only and that Jani had stated that PlainsCapital's method of clearing the checks did not matter as he would control the checkbook and handle Franklin Transfer's payables. Jani, however, testified that Amanda Franklin controlled the checkbook and that the bank statements did not come to him. He further testified that on one occasion, he received a telephone call from "one of the bank folks" asking him whether he

3

would like it to honor a check for over $5,000 that was signed only by Amanda Franklin. After learning that the check was payable to a freight company, Jani approved the check.

From February 2008 through November 2008, PlainsCapital advanced Franklin Transfer $245,670.41 on the line of credit and deposited the money into Franklin Transfer's checking account.[4] The evidence introduced at trial showed that PlainsCapital honored fifteen checks written on Franklin Transfer's checking account that exceeded $5,000 and lacked Jani's signature. These checks totaled $154,195. Eleven checks, which totaled $114,495, were signed once by Amanda Franklin. The remaining checks, which totaled $39,700, were signed twice by Amanda Franklin.

When the note matured by its terms on January 15, 2009, it had a balance of $245,670.41. Franklin Transfer executed a renewal note on January 15, 2009. Amanda Franklin signed the renewal note as president of Franklin Transfer, and Jani signed as vice president. Amanda Franklin and Jani each executed a

---

[4]Contemporaneously with the note, Amanda Franklin and Jani, acting on behalf of Franklin Transfer in their capacities as president and "co-president" respectively, signed an authorization by the corporation, which authorized Amanda Franklin and Jani to conduct business with PlainsCapital on behalf of Franklin Transfer and stated, among other things, that the power to "obtain . . . financial accommodation" from PlainsCapital could be exercised only by Amanda Franklin and Jani and required both of their signatures. DeFrancisco testified that transferring sums from a line of credit into a checking account was a financial accommodation. Jani contended at trial that PlainsCapital improperly moved advances on the line of credit into Franklin Transfer's checking account without the two required signatures.

4

second continuing guaranty personally guaranteeing payment and performance of the renewal note and any other debt incurred by Franklin Transfer, including without limitation, principal, interest, attorney's fees, and collection costs. The renewal note matured on March 15, 2009.

When Franklin Transfer failed to pay the balance due on the note by the March 15, 2009 maturity date, Amanda Franklin, in her capacity as president, signed another renewal note on behalf of Franklin Transfer; this renewal note matured on May 15, 2009. Jani refused to sign the second renewal note and another guaranty. Even though Jani did not sign the second renewal note, PlainsCapital treated the note as renewed and considered May 15, 2009, as the maturity date.

Franklin Transfer defaulted on the note. After default, PlainsCapital permitted Amanda Franklin to wire $14,000 from Franklin Transfer's checking account to third parties. On June 22, 2009, PlainsCapital made demand on Franklin Transfer for $245,670.41, plus $2,484 in accrued interest as of the date of the demand. Internal bank documents admitted into evidence showed that in June and July 2009, Franklin Transfer turned over approximately $235,000 in uncollected invoices to PlainsCapital. DeFrancisco testified that PlainsCapital sent out invoices totaling $60,000 and collected $40,000, which it credited to the amount due on the note.

5

PlainsCapital sued Jani for breach of the guaranty.[5]  In his answer, Jani alleged that PlainsCapital had failed to dispose of the collateral in a commercially reasonable manner, *see* Tex. Bus. & Com. Code Ann. § 9.627 (West 2011), which caused an inflated balance due on the guaranty.  Jani also asserted misrepresentation and breach of contract counterclaims against PlainsCapital.  Jani alleged that PlainsCapital had misrepresented that the controls put in place would prevent checks written on Franklin Transfer's checking account in amounts greater than $5,000 from being honored without Jani's approval and had misrepresented that no checks in excess of $5,000 had been honored.  In support of his breach of contract claim, Jani alleged that PlainsCapital had honored multiple checks over $5,000 without Jani's signature.

The case was tried to a jury.  DeFrancisco testified that the principal amount due on the note it was attempting to collect from Jani was $205,061.07.  Pertinent to this appeal, the jury found in answer to question two that PlainsCapital suffered $128,624 in damages as a result of Jani's breach of the guaranty; in answer to question four that PlainsCapital failed to dispose of Franklin Transfer's accounts receivable in a commercially reasonable manner;

---

[5]Amanda Franklin filed for divorce in 2009.  PlainsCapital intervened in the divorce proceeding to collect the sums due under the January 2009 renewal note and personal guaranty signed by Amanda Franklin.  PlainsCapital severed its claims against Amanda Franklin.  On November 5, 2010, the trial court entered an agreed final judgment against Amanda Franklin for $205,061.07 in principal and interest due on the note, $4,000 in attorney's fees, and $363 in court costs, plus postjudgment interest at a rate of eighteen percent per annum.

6

and in answer to question five that the value of the accounts receivable at the time they were received by PlainsCapital was $160,000. The jury further found PlainsCapital's reasonable and necessary attorney's fees were $120,000 for preparation and trial, $75,000 for an appeal to the court of appeals, and $30,000 for an appeal to the supreme court and found Jani's reasonable and necessary attorney's fees were $75,000 for preparation and trial, $50,000 for an appeal to the court of appeals, and $30,000 for an appeal to the supreme court.

In its motion for judgment, PlainsCapital asked the trial court to enter judgment against Jani for $128,624, the amount of damages found by the jury in response to question two, and its attorney's fees as found by the jury, plus prejudgment and postjudgment interest. Jani's motion for judgment asked the trial court to enter a take-nothing judgment against both parties. After a hearing, the trial court offset the jury's finding of the value of the accounts receivable ($160,000) against the jury's damages finding ($128,624) and entered a take-nothing judgment against PlainsCapital and Jani on their respective breach of contract claims. The trial court also found that neither PlainsCapital nor Jani was entitled to attorney's fees because neither party was the prevailing party and neither party "adequately proved each of the elements required to be entitled to [attorney's] fees."

PlainsCapital filed a motion to reform the judgment, asking the trial court to reform the judgment to reflect the jury's findings of $128,624 in damages and $120,000 in attorney's fees. In the alternative, PlainsCapital asked the trial court

7

to reform the judgment "to reflect the only possible damage number that the law and the evidence allow: $129,203"[6] and to award PlainsCapital $120,000 in attorney's fees. In the further alternative, PlainsCapital asked for a new trial on damages. After a hearing, the trial court denied the motion. PlainsCapital appealed.

## DISCUSSION

In its first issue, PlainsCapital argues that the trial court erred by offsetting the jury's answer to question five (the value of the collateral) against the jury's answer to question two (the damages resulting from Jani's breach of the guaranty), resulting in a take-nothing judgment against PlainsCapital. PlainsCapital argues that the trial court should have disregarded the jury's answer to question five and entered judgment on the verdict for the full amount of damages found by the jury in response to question two. In the alternative, PlainsCapital argues that the trial court should have entered judgment in an amount corrected for the jury's "math errors."

A trial court may disregard a jury finding if there is no evidence to support the finding, which is not alleged here, or if the finding is immaterial. Tex. R. Civ. P. 301; *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994). A jury question is considered immaterial when it should not have been submitted, it calls for a finding beyond the province of the jury, or it has been rendered

_____

[6]PlainsCapital's calculation method for arriving at $129,203 is explained below in footnote 7.

8

immaterial by other findings. *Se. Pipe Line Co., Inc. v. Tichacek*, 997 S.W.2d 166, 172 (Tex. 1999).

PlainsCapital complains that the trial court should have disregarded the jury's answer to question five and not offset the jury's answer to question five against its answer to question two because the jury took into account the $160,000 it found was the value of the accounts receivable at the time they were received by PlainsCapital when arriving at its finding that PlainsCapital was damaged $128,624 as a result of Jani's breach of the guaranty. Thus, the trial court should have entered a judgment of $128,624 in favor of PlainsCapital. PlainsCapital asks us to enter judgment in its favor for $128,624 or, in the alternative, $129,203.[7] We construe these contentions as an argument that jury question five was rendered immaterial by the jury's finding to question two.

"Article 9 of the Texas Uniform Commercial Code provides that when a debtor defaults on an obligation, a secured party may take possession of collateral, dispose of it, and apply the proceeds to help satisfy the obligation." *Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 647 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing Tex. Bus. & Com. Code Ann. §§ 9.609, 9.610,

---

[7]In its motion to reform the judgment and on appeal, PlainsCapital claims this amount is owed on the note after crediting Jani $160,000 for the value of the collateral as found by the jury in response to question five. PlainsCapital arrives at this number by adding the principal due on the note ($245,670) plus accrued interest ($3,009), subtracting the value of the collateral determined by the jury in response to question five ($160,000), and adding what it claims to be the exact amount of the collected receivables it already applied to the debt ($40,533). We note that this calculation actually results in a total of $129,212.

9

9.615 (West 2011)). "If the proceeds are insufficient to satisfy the obligation, and the secured party wishes to obtain a deficiency judgment for the amount still owing on the obligation, '[e]very aspect of [the] disposition of collateral, including the method, manner, time, place and other terms, must be commercially reasonable.'" *Id.* (citing Tex. Bus & Com. Code Ann. § 9.610). When, as here, the secured party's compliance is placed in issue, it "has the burden of establishing that the . . . disposition . . . was" commercially reasonable. Tex. Bus. & Com. Code Ann. § 9.626(a)(2) (West 2011). The commercial reasonableness of a sale is a question of fact to be determined by the jury. *Gordon & Assocs., Inc. v. Cullen Bank/Citywest, N.A.*, 880 S.W.2d 93, 96 (Tex. App.—Corpus Christi 1994, no writ). When the secured party fails to prove that the disposition of the collateral was commercially reasonable, the liability of a debtor or secondary obligor for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of (1) the proceeds of the disposition or (2) the amount of proceeds that would have been realized had the noncomplying secured party disposed of the collateral in a commercially reasonable manner. *See* Tex. Bus. & Com. Code Ann. § 9.626(a)(3) (West 2011). "[T]he amount of proceeds that would have been realized is equal to the sum of the secured obligation, expenses, and attorney's fees, unless the secured party proves that the amount is less than that sum." *Id.* § 9.626(a)(4) (West 2011).

It was apparent during the charge conference that the trial court was using section 9.626 in formulating questions four and five. Question four asked if PlainsCapital disposed of the accounts receivable in a commercially reasonable manner. Question five, conditioned on a "no" answer to question four as found by the jury, provided in part as follows:

> What amount, stated in dollars and cents, represents the value of the Accounts Receivable at the time they were received by the Bank?[8]

> It is a rebuttable presumption that the value of the Accounts Receivable is equal to $245,670.00 unless a different value is proven by a preponderance of the evidence.

The jury answered $160,000.

PlainsCapital does not complain on appeal that questions four and five do not follow article 9 or that the trial court erred in its application of article 9 to the jury's findings. PlainsCapital speculates that the jury used the $160,000 it found in question five in arriving at its answer to question two as to the amount of damages and argues that, therefore, question five should be disregarded. But question two—to which PlainsCapital did not object—included the instructions, "Answer each question separately. Do not increase or reduce the amount in one answer because of the instructions in or your answers to any other questions about damages." We presume that the jury followed the instructions in the charge. *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851,

---

[8]The instructions in the trial court's charge instructed the jury that "Bank" referred to PlainsCapital.

11

862 (Tex. 2009) (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex. 2003)). Accordingly, it is mere speculation that the jury—contrary to both the instructions in question two and the presumption that it followed those instructions—utilized its finding of $160,000 as the value of the collateral in response to question five in arriving at its determination of the amount of damages resulting from Jani's breach of the guaranty found in response to question two. Thus, we cannot conclude that the jury's finding in response to question five was rendered immaterial by the jury's finding in response to question two. And, therefore, the jury's answer to question five was not required to be disregarded, and the trial court did not err by offsetting the value of the collateral as found by the jury in question five against the damages resulting from Jani's breach of the guaranty as found by the jury in question two. We overrule PlainsCapital's first issue.

In its second issue, PlainsCapital argues that upon this court's reversal of the trial court's judgment and rendering judgment in its favor, it is entitled to recover its attorney's fees as the prevailing party. In light of our holding on PlainsCapital's first issue, we need not address its second. Moreover, the trial court also found that PlainsCapital was not entitled to recover its attorney's fees because it had not "adequately proved each of the elements required to be entitled to [attorney's] fees." PlainsCapital does not challenge this finding on appeal. Accordingly, we overrule its second issue.

12

**CONCLUSION**

Having overruled both of PlainsCapital's issues, we affirm the trial court's judgment.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  November 19, 2015