# Court of Appeals
## Tenth Appellate District of Texas

---

### 10-24-00159-CV

---

John Deere Construction & Forestry Company,
Appellant

v.

Bradly S. Irwin,
Appellee

---

On appeal from the
82nd District Court of Falls County, Texas
Judge Bryan F. Russ Jr., presiding
Trial Court Cause No. CV41107

---

JUSTICE SMITH delivered the opinion of the Court.

### MEMORANDUM OPINION

John Deere Construction and Forestry Company appeals from the trial court's take nothing judgment rendered in John Deere's deficiency suit filed against Bradly S. Irwin, who defaulted on a note. In two issues, John Deere contends the evidence is legally and factually insufficient to support the trial court's judgment. We affirm.

## BACKGROUND

Pursuant to a retail installment contract, Irwin purchased a dozer and an attachment from RDO Construction Equipment Company. RDO immediately assigned the contract to John Deere. About a year later, Irwin defaulted on the loan and John Deere repossessed the equipment. John Deere received no response to the notices and demands for payment it sent to Irwin. After the equipment was sold, a deficiency remained.

Angela Bradley, recovery administrator at John Deere Financial, handles the collection of recovery accounts. She testified that, through John Deere's web-based secure site, Machine Finder Pro, John Deere re-markets repossessed equipment. Approved dealers must register and apply through John Deere to obtain access. The site is accessible twenty-four hours a day, seven days a week to the audience of interested buyers in the targeted market of construction equipment. She explained that pictures and descriptions of the equipment are loaded into the secure site, and it is viewable and usable by registered used equipment dealers and John Deere dealers. All users of the site receive a preview that the item is coming up for sale.

Bradley stated that hundreds of dealers have access to that information, including the photographs, serial number, notes from the inspection, and the overall condition of the equipment. She testified that it is "continuously

marketed that way." The site is reviewed on a weekly basis to see if price reductions need to be made, if outbound calls need to be made, to seek out potential buyers, and to generate interest and offers. The equipment is not offered for sale in any manner to companies or individuals who are not registered to use the website. Bradley stated that it has been done this way for over twenty years. She explained that normally, an individual would go to a dealership to purchase that equipment. If the dealer did not have it on their lot, they would look for one on Machine Finder Pro, or other lots.

This equipment was entered into Machine Finder Pro on November 26, 2019 and listed on January 9, 2020. It sold on January 23, 2020. Assuming an acceptable offer is made, John Deere's goal is to sell the equipment as timely as possible to mitigate the damage and the deficiency, while getting the best price possible.

Bradley testified that the condition of this equipment was poor. It needed a full undercarriage, was damaged, and needed a lot of service. No repairs were done, and it was sold "as is." The equipment remarketing services group considered the equipment inspection report, along with book values and other outside resources, to determine the wholesale value based on the condition of the equipment. They also looked at the value of comparable equipment that was either listed at the same time or had recently sold. The

wholesale value of the equipment repossessed from Irwin was determined to be $48,000.

Bradley testified that she was unaware if there were inquiries by people interested in purchasing the equipment. There was only one offer. That offer was by RDO, the same company that sold the equipment to Irwin. The equipment sold for $42,000. Bradley was not aware of any negotiation about the price. She believes that is a fair price for this equipment, based on its condition and comparable units for sale at the same time. John Deere obtained eighty-seven percent of the wholesale price. Bradley testified that nothing about the way the equipment was marketed led to a depressed price.

Regarding John Deere's methodology for selling repossessed equipment, the following exchange occurred:

> Counsel: Have you done some checking to determine whether or not there are other dealers that use similar processes to dispose of used collateral?
>
> Bradley: Yes. Generally speaking, yes.
>
> Counsel: Did you see anything in the records to indicate that John Deere did not utilize a method or procedure that's different than everybody else?
>
> Bradley: No.
> ……
> Counsel: Would you consider Machine Finder Pro to be a recognized market for dealers of bull dozers?
>
> Bradley: Yes.

Counsel: How is it that people in the industry would know about that?

Bradley: John Deere dealers are familiar with the process and the Machine Finder Pro site.

Counsel: Does anybody, other than John Deere dealers, have access to that?

Bradley: The used equipment brokers, as I mentioned. They have to go through an approval process to be registered and approved to use the site.

In its findings of fact and conclusions of law, the trial court found and concluded that John Deere's disposition of the collateral was not commercially reasonable. The court also concluded that John Deere failed to prove that had a commercially reasonable sale occurred, it would have yielded an amount less than the sum of the secured obligation, expenses, and attorney's fees, and as a result, John Deere may not recover any deficiency. The court rendered a take nothing judgment against John Deere.

### SUFFICIENCY OF THE EVIDENCE

In its first issue, John Deere asserts the evidence is legally insufficient to support the trial court's judgment. It argues the evidence shows the sale of the collateral was commercially reasonable. It asserts that "[t]he trial court's decision is further frustrated by [Irwin's] failure to provide any evidence that challenged the method, manner, time, place of the sale, or any other factor that

would disprove Deere sold the collateral in a commercially reasonable manner." In its reply brief, citing Texas Business and Commerce Code Section 9.627(b), John Deere asserts that the evidence proves the disposition was commercially reasonable because the collateral was sold in conformity with reasonable commercial practices among dealers in the type of property subject to the disposition and at the price current in a recognized market at the time of the disposition.

John Deere further argues that, if the sale was not commercially reasonable, the rebuttable presumption rule should be applied to determine the amount of the deficiency that should have been realized. John Deere complains that the trial court did not determine the amount of the deficiency that should have been realized as is required under Section 9.626. It asserts that no evidence in the record supports a finding by the trial court that the value of the collateral was equal to the deficiency balance. It further argues that the evidence that the collateral sold for $42,000 rebutted any presumption that the collateral should have sold for an amount that equals the deficiency balance.

John Deere also asserts that, because the contract entered into by Irwin entitles John Deere to attorney's fees, the trial court erred in denying John Deere's request for attorney's fees.

In its second issue, John Deere asserts the trial court's finding that the sale was commercially unreasonable is not supported by factually sufficient evidence. It asserts that it obtained the best price possible under the circumstances. The collateral was sold at a private sale after it was evaluated and marketed to a target market, and John Deere ultimately obtained eighty-seven percent of the wholesale value. It contends that it complied with Section 9.627 because (1) its use of Machine Finder Pro is a usual manner and recognized market for repossessed commercial equipment, (2) it evaluated the collateral and priced it according to its condition, and (3) dealer only auctions are recognized as a commercially reasonable private sale method for disposing of repossessed collateral.

John Deere also asserts that, assuming the sale was not commercially reasonable, Section 9.626's rebuttable presumption must be applied, the record contains factually sufficient evidence of the value of the collateral, $42,000, and any finding by the trial court that the amount of the deficiency equaled the value of the collateral would be against the great weight of the evidence.

**Standard of Review**

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them just as we

would review a jury's findings. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *Anderson v. Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We review the trial court's conclusions of law de novo; that is, we review the trial court's legal conclusions drawn from the facts to determine their correctness. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

A party attacking the legal sufficiency of the evidence supporting an adverse finding on an issue on which the party bore the burden of proof must demonstrate all vital facts in support of the issue were established as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). The analysis requires that we first examine the record in the light most favorable to the verdict for some evidence supporting the finding, crediting evidence favoring the finding if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 822 (Tex. 2005). We must indulge every reasonable inference that would support the verdict. *Id*. at 822. Some evidence, meaning more than a scintilla, exists when the evidence supporting the finding "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

If, however, no evidence appears to support the finding, we then examine the entire record to determine whether the contrary proposition is established as a matter of law; the issue will be sustained only if the contrary proposition is conclusively established. *PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 557 (Tex. 2015); *Francis*, 46 S.W.3d at 241. A proposition is established as a matter of law when a reasonable fact finder could draw only one conclusion from the evidence presented. *See City of Keller*, 168 S.W.3d at 814-16.

When considering a factual sufficiency challenge, we consider and weigh all of the evidence. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g). An appellant attacking factual sufficiency with respect to an adverse finding on which he had the burden of proof must demonstrate that the finding is against the great weight and preponderance of the evidence. *Francis*, 46 S.W.3d at 242. We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool*, 715 S.W.2d at 635. We may not substitute our judgment for that of the trier of fact or pass on the credibility of the witnesses. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). In a bench trial, the trial court may resolve any inconsistencies in the testimony as well as determine the weight of the evidence. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

**Applicable Law**

After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral. TEX. BUS. & COM. CODE ANN. § 9.610(a). Every aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. *Id.* § 9.610(b). A disposition of collateral is made in a commercially reasonable manner if the disposition is made: (1) in the usual manner on any recognized market; (2) at the price current in any recognized market at the time of the disposition; or (3) otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition. *Id.* § 9.627.

The creditor has the burden of showing the commercial reasonableness of the sale. *Id.* § 9.626(a)(2). The commercial reasonableness of a sale is a question of fact. *See Gordon & Assocs., Inc. v. Cullen Bank/Citywest, N.A.*, 880 S.W.2d 93, 96 (Tex. App.—Corpus Christi 1994, no writ). When a secured party fails to prove that the disposition of the collateral was commercially reasonable, the liability of a debtor or secondary obligor for a deficiency is limited to an amount by which the sum of the secured obligation, expenses, and attorney's fees exceeds the greater of (1) the proceeds of the disposition or (2) the amount of proceeds that would have been realized had the noncomplying secured party disposed of the collateral in a commercially

reasonable manner.  TEX. BUS. & COM. CODE ANN. § 9.626(a)(3).  For purposes of subdivision (a)(3), the amount of the proceeds that would have been realized is equal to the sum of the secured obligation, expenses, and attorney's fees, unless the secured party proves that the amount is less than that sum.  *Id.* § 9.626(a)(4).

**Analysis**

*Commercially Reasonable*

We first examine the record in the light most favorable to the verdict for some evidence supporting the trial court's finding that the sale of the collateral was not commercially reasonable.  *See City of Keller*, 168 S.W.3d at 822.  Courts have considered a number of nonexclusive factors when addressing commercial reasonableness, such as: (1) whether the secured party endeavored to obtain the best price possible; (2) whether the collateral was sold in bulk or piecemeal; (3) whether it was sold via private or public sale; (4) whether it was available for inspection before the sale; (5) whether it was sold at a propitious time; (6) whether the expenses incurred during the sale were reasonable and necessary; (7) whether the sale was advertised; (8) whether multiple bids were received; (9) what state the collateral was in; and (10) where the sale was conducted. *See Regal Fin. Co., Ltd. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 601-02 (Tex. 2010).

The evidence shows that, when John Deere repossessed the equipment, repairs were needed but never performed. The equipment was sold via a private online sale, not in and of itself a negative. But while John Deere has its own scheme for marketing repossessed equipment, that scheme has severe limitations.

Bradley's testimony that normally an individual would go to a dealer to purchase the equipment is conclusory. There is no factual evidence to back up the statement. This conclusion led to the conclusion that John Deere needed to advertise only on a website that is available only to registered dealers. There is no evidence showing how many dealers exist, how they find out about registration for the website, or how they are approved. The statement that hundreds of dealers have access has little meaning when there is no evidence to show how many dealers did not have access. Members of the public might have been interested had they known this equipment was for sale. Further, while the targeted audience can peruse the information and pictures on the website, there is no evidence regarding the availability of in-person inspections of the repossessed equipment. The evidence shows that John Deere's method for identifying the targeted market for its construction equipment resulted in a narrow audience.

Although Bradley testified that she did not see anything in the records to indicate John Deere did not utilize a method that is different than other dealers, there is no evidence in the record that this method is an industry standard or which other companies, if any, use this method. Thus, the evidence does not show that the sale was made "in the usual manner on any recognized market" or that the disposition was "otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." *See* TEX. BUS. & COM. CODE ANN. § 9.627(b)(1), (3).

The equipment was listed on the website for about two weeks when John Deere received the one and only offer, one that was accepted without negotiation. Bradley stated that it was John Deere's goal to sell the equipment as timely as possible to mitigate the damage and deficiency. She did not explain how accepting a low offer after a short advertisement period mitigated the damages. Further, there is no evidence that selling a used dozer in the winter was preferable to selling it during a time of year when the weather may be more conducive to its use.

The wholesale value of the equipment was determined to be $48,000. Bradley explained generally how the equipment remarketing services group arrived at that number. But there was no evidence to back it up, such as the

inspection report, book values, unidentified "other outside resources," and specific comparable equipment they considered.

Bradley testified that she thought the price they obtained, $42,000, is a fair price based on the condition of the equipment and comparable units for sale at the time. The listing contained the general statement that the equipment "needs full undercarriage, has damage, needs a lot of service." A notation on the Machine Finder Pro listing states: "$25000; major UC, HYD, and blade repairs." Bradley testified that means someone on the equipment remarketing service team indicated it would cost $25,000 to replace the undercarriage. There is no evidence regarding how much any other required repairs would cost or the precise effect the damage has on the value of the equipment. Further, Bradley's conclusory statement that John Deere obtained a fair price was not backed up with evidence of values of comparable units. Finally, Bradley provided the conclusory statement that nothing about the way the equipment was marketed led to a depressed price. The evidence does not show that the disposition was made at "the price current in any recognized market at the time of the disposition." *See* TEX. BUS. & COM. CODE ANN. § 9.627(b)(2).

The evidence presented lacked factual bases for the conclusions John Deere relies on. Moreover, the evidence supports the reasonable inferences

that advertising for the sale was insufficient, the targeted audience was too limited, and the value of the equipment was not established. *See City of Keller*, 168 S.W.3d at 822. There is some evidence supporting the trial court's finding that the disposition of the collateral was not commercially reasonable. *See Havner*, 953 S.W.2d at 711. Furthermore, the finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Pool,* 715 S.W.2d at 635. Accordingly, the evidence is legally and factually sufficient to support the trial court's finding that the disposition of the collateral was not commercially reasonable. *See Havner*, 953 S.W.2d at 711; *Pool*, 715 S.W.2d at 635.

*Rebuttable Presumption*

Section 9.626 provides for a rebuttable presumption applicable to determine the amount the secured party may recover in cases where that party has not proven that the disposition of the collateral was commercially reasonable. *See* TEX. BUS. & COM. CODE ANN. § 9.626(a)(3). The presumed fact under Section 9.626(a)(4) is that the amount of proceeds that would have been realized from the sale of the collateral had the creditor disposed of it in a commercially reasonable manner is equal to the sum of the secured obligation, expenses, and attorney's fees, thereby eliminating any deficiency. *Id.* § 9.626(a)(4). If the court finds that sufficient rebutting evidence has been

introduced by the creditor, the presumption falls away. *Id.* The creditor must establish that the amount that would have been obtained at a sale conducted in accordance with the requirements of the statute is less than the sum of the secured obligation, expenses, and attorney's fees in order to recover a deficiency. *Id.*

Here, John Deere proved that it sold the collateral for $42,000. But it failed to provide evidence of any amount that could have been obtained from a commercially reasonable sale. Accordingly, the trial court properly concluded that John Deere failed to prove that had a commercially reasonable sale occurred, it would have yielded an amount less than the sum of the secured obligation, expenses, and attorney's fees and, as a result, John Deere may not recover any deficiency. The evidence is legally and factually sufficient to support the trial court's determination that John Deere failed to rebut the presumption of Section 9.626. *Id.*

*Attorney's Fees*

John Deere asserts that, since Texas adheres to the "American Rule," it may recover its attorney's fees as provided for in the contract entered into by Irwin. The contract states that if the seller determines that the purchaser is in default, the seller may require the purchaser to reimburse the seller for all

losses, claims, damages, and expenses including, among many other things, attorney's fees.

Under the "American Rule," attorney's fees are not awarded unless specifically authorized by statute or by a contract between the parties. *MBM Fin. Corp. v. The Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009). Parties are free to contract for agreed-upon fee-recovery terms. *See Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). Any award of fees is limited by the wording of the statute or contract that creates an exception to the American Rule. *JCB, Inc. v. Horsburgh & Scott Co.*, 597 S.W.3d 481, 491 (Tex. 2019). Typical contract provisions state that the prevailing party in an action to enforce the terms of the contract shall be entitled to his reasonable attorney's fees. *See Intercontinental Grp. P'ship*, 295 S.W.3d at 652. When fee shifting is authorized, whether by statute or contract, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fee. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019).

In support of its argument, John Deere relies on cases involving contracts that provide attorney's fees are to be awarded to the prevailing party. *See Intercontinental Grp. P'ship*, 295 S.W.3d at 652; *Severs v. Mira Vista*

*Homeowners Ass'n, Inc.*, 559 S.W.3d 684, 690 (Tex. App.—Fort Worth 2018, pet. denied). Here, the parties' contract did not include a requirement that the seller must be the prevailing party to obtain an award of attorney's fees. However, it would be unreasonable to award attorney's fees to the losing party. *See Rohrmoos Venture*, 578 S.W.3d at 484.

## CONCLUSION

The evidence is legally and factually sufficient to support the trial court's finding that the collateral was not disposed of in a commercially reasonable manner. Further, the evidence is legally and factually sufficient to support the trial court's determination that John Deere did not prove it is entitled to recover a deficiency upon application of the rebuttable presumption rule. Finally, John Deere is not entitled to an award of attorney's fees. We overrule John Deere's first and second issues.

We affirm the trial court's judgment.

STEVE SMITH
Justice

OPINION DELIVERED and FILED:  August 28, 2025

Before Chief Justice Johnson,
       Justice Smith, and
       Justice Harris
Affirmed
CV06

